**FILED**



[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

OCT 2 4 2018

THOMAS G BRUTON
CLERK, U.S DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

Yu L. Zhan

_____

Plaintiff(s),

v. Board of Trustees of

the University of Illinois

Defendant(s).

**1:18-cv-07115**
**Judge Charles R. Norgle, Sr**
**Magistrate Judge M. David Weisman**

### COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is ___Yu L. Zhan___ of the county of ___Cook___ in the state of ___Illinois___.

3. The defendant is ___Board of Trustees of the University of Illinois___ whose street address is ___506 S. Wright Street___.
(city) ___Urbana___ (county) ___Champaign___ (state) ___Illinois___ (ZIP) ___61801___
(Defendant's telephone number) ___(217) – 333 – 1920___

4. The plaintiff sought employment or was employed by the defendant at (street address)
___1740 W. Taylor Street___ (city) ___Chicago___
(county) ___Cook___ (state) ___IL___ (ZIP code) ___60612___

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

5.  The plaintiff [*check one box*]

    (a) ☐ was denied employment by the defendant.

    (b) ☑ was hired and is still employed by the defendant.

    (c) ☐ was employed but is no longer employed by the defendant.

6.  The defendant discriminated against the plaintiff on or about, or beginning on or about,
(month)___7___, (day)__1__, (year) _2013_.

7.1  *(Choose paragraph 7.1 or 7.2, do not complete both.)*

    (a) The defendant is not a federal governmental agency, and the plaintiff
[*check one box*] ☑*has* ☐*has not* filed a charge or charges against the defendant

    asserting the acts of discrimination indicated in this complaint with any of the

    following government agencies:

        (i) ☑ the United States Equal Employment Opportunity Commission, on or about

        (month)___5___ (day)__3__ (year) _2018_.

        (ii) ☐ the Illinois Department of Human Rights, on or about

        (month)_____ (day)_____ (year)_____.

    (b) If charges *were* filed with an agency indicated above, a copy of the charge is

    attached. ☑ Yes, ☐ No, **but plaintiff will file a copy of the charge within 14 days**.

It is the policy of both the Equal Employment Opportunity Commission and the Illinois

Department of Human Rights to cross-file with the other agency all charges received. The

plaintiff has no reason to believe that this policy was not followed in this case.

7.2  The defendant is a federal governmental agency, and

    (a) the plaintiff previously filed a Complaint of Employment Discrimination with the

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

2

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

defendant asserting the acts of discrimination indicated in this court complaint.

    ☐ Yes (month)_____ (day)_____ (year) _____

    ☐ No, did not file Complaint of Employment Discrimination

(b)    The plaintiff received a Final Agency Decision on (month)_____

    (day) _____ (year) _____.

(c)    Attached is a copy of the

    (i) Complaint of Employment Discrimination,

        ☐ Yes    ☐ No, but a copy will be filed within 14 days.

    (ii) Final Agency Decision

        ☐ Yes    ☐ N0, but a copy will be filed within 14 days.

8.    *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

    (a) ☐    the United States Equal Employment Opportunity Commission has not

        issued a *Notice of Right to Sue.*

    (b) ☑    the United States Equal Employment Opportunity Commission has issued

        a *Notice of Right to Sue,* which was received by the plaintiff on

        (month)___8_____ (day) 25 (year) 20 1 8 a copy of which

        *Notice* is attached to this complaint.

9.    The defendant discriminated against the plaintiff because of the plaintiff's [*check only*

    *those that apply*]:

    (a) ☑    Age (Age Discrimination Employment Act).

    (b) ☐    Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

(c) ☐ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☑ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☑ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☑ Sex (Title VII of the Civil Rights Act of 1964)

10. If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11. Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the ADA by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791; and for the ADEA, 29 U.S.C. § 626(c).

12. The defendant [*check only those that apply*]

(a) ☐ failed to hire the plaintiff.

(b) ☐ terminated the plaintiff's employment.

(c) ☐ failed to promote the plaintiff.

(d) ☐ failed to reasonably accommodate the plaintiff's religion.

(e) ☐ failed to reasonably accommodate the plaintiff's disabilities.

(f) ☑ failed to stop harassment;

(g) ☑ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h) ☑ other (specify): Please see Attachment I Charges

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____

_____

_____

_____

13. The facts supporting the plaintiff's claim of discrimination are as follows:

Please see Attachment II

Factual Allegations.

_____

_____

_____

14. **[*AGE DISCRIMINATION ONLY*]** Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury. ☑ Yes ☐ No

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

(a) ☐ Direct the defendant to hire the plaintiff.

(b) ☐ Direct the defendant to re-employ the plaintiff.

(c) ☐ Direct the defendant to promote the plaintiff.

(d) ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

(e) ☐ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f) ☑ Direct the defendant to (specify): Please see Attachment III

Pray for Relief

_____

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____

_____

_____

(g)  ☑  If available, grant the plaintiff appropriate injunctive relief, lost wages,
         liquidated/double  damages, front pay, compensatory damages, punitive
         damages, prejudgment interest, post-judgment interest, and costs, including
         reasonable attorney fees and expert witness fees.

(h)  ☑  Grant such other relief as the Court may find appropriate.


_Yu l Zhan_
(Plaintiff's signature)

_Yu   L.   Zhan_
(Plaintiff's name)

_2913   S.   Union   Ave._
(Plaintiff's street address)

(City) _Chicago_      (State) _IL_     (ZIP) _60616_

(Plaintiff's telephone number) (312) – _225 – 4401_

                                    Date: _10/24/2018_


[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

# Attachments

I.  Charges

II.  Factual Allegations (pp. 1-37, 37 pages in total)

III.  Pray for Relief

IV.  Copy of Letter of Suit Right Issued on August 22, 2018 by EEOC

V.  EEOC Form 5 Issued on August 15, 2018, Where Discrimination
    Charges Are Included

VI.  Copy of Cover Letter of Complaint Submitted to EEOC Via U.S.
    Postal Office on May 3, 2018. Attachments therein are available if
    required.

VII.  Receipt of Certificate Mail of the Filing on May 3, 2018

VIII.  Copy of Cover Letter Submitted to EEOC Investigator on July 23,
    2018. Attachments therein are available if required.

# Attachment I

## Charges

1. Retaliation for challenging, exposing, and reporting personal wrongdoings and continuous unlawful employment practice, including but not limited to sexual harassment, continuous and ongoing discrimination based on gender, race, age, national origin, and continuous and willful violation of Equal Pay Act;

2. Some supervisors committed fraud, knowingly and willingly, by issuing a Letter of Warning in 2017 based on false accusations and false arguments; and some managers and officers aid, abet, participate in, or connive at those false accusation and false arguments in order to cover-up personal wrongdoings and illegal employment practice; and all material issues and statements of fact I raised were completely ignored in the grievance process before I filed a Complaint with EEOC. And in 2018, as a continuous and further retaliatory measure, a suspension was issued.

3. Some supervisors, knowingly and willingly, committed slander, libel and defamation.

4. Some supervisor(s) and/or manager(s) create a hustle work environment by yelling, shouting, intimidation and harassment;

5. Some supervisor(s)/manager(s) intentionally inflicted emotional distress.

## Attachment II    Factual Allegations

### A.    Introduction

1. I began my employment with Defendant on or about December 1, 2008 as IT Technical Associate in the Material Management Department at UI Health (UIC). University of Illinois System, maintained and governed by Trustees.

2. On May 3, 2018, I filed a complaint against Defendant with EEOC. On May 18, 2018, I had a brief interview with an EEOC investigator; later, I received a call from him on my cell phone, and a meeting on August 15, 2018 was scheduled. On July 23, 2018 I submitted a letter to the assigned investigator; on August 15, 2018 a case number was assigned by him. On August 22, 2018, EEOC issued a Notice of Suit Right by another investigator. (See Attachments IV-VIII)

### B.    The 2017 Pre-disciplinary Action Meeting Notice and the Letter of Warning are products of fraud. This material issue cannot be ignored and covered up

3. The evidence will show that the 2017 Pre-disciplinary Action Meeting Notice ("Notice") and the Letter of Warning ("Letter") were based on false accusations and misleading arguments. They are products of fraud beyond any cure.

4. The evidence will show that the 2017 Notice and the Letter of Warning are tools of retaliation for challenging, exposing and reporting illegal personal wrongdoings and illegal employment activities.

5. The evidence will show that the retaliatory nature of both the 2017 Notice and the Letter is indisputable. The fraudulent content of those documents, the sequence of events

- 1 -

happened in 2017, and the timing of their fabrications, all lead to the same above affirmative conclusion. It is common knowledge that any retaliatory action as part of employment practice is willful violation of law in and of itself.

6. The evidence will show that it is on the face of the text, that the 2017 Notice and Letter are frivolous per se, as they did not and cannot list a single event happened between May 19, 2017 and October 25, 2017, i. e. the only relevant time period, from the 2017 KRA of good work performance assertion was drafted to the fraudulent Notice was cooked up.

7. The evidence will show that Defendant concocted bogus accusations as a start based solely or heavily on self-conflicting false and absurd arguments about a query-set generating Month-end financial reports. But the same defendant has been trying to avoid, evade, cover-up or deflect this material issue ever since.

8. The evidence will show that Defendant engaged in discrimination and retaliation with malice and/or reckless indifference to my protected right under Federal statutes.

9. It is a plain fact that Defendant fails to answer several extremely simple but material questions ever since: (1) Who developed the subject query-set several people at Defendant have been using and whether it is defective, and (2) what the cause of action, motive, evidence, causation, and correlation to any of the false allegations Defendant purported when it argues there were two queries or two sets of queries in the computer system.

10. Mr. Michael Fitzgerald is the head of the Materials Management Department ("department"). He knew or should have known the Notice and the Letter of Warning consisted of nothing but false accusations with false arguments. But he did not or failed to do anything about it.

- 2 -

11. Further, the evidence will show that some officers and managers aid, abet, participate in, or connive at those false accusations and false arguments in order to cover-up personal wrongdoings and illegal employment practice.

### C. My good work performance shall never be at Issue, pervasive discriminatory treatment of employees is a common practice Inside the department

12. My good work performance was already evaluated and documented in 2017 KRA (Key Results Aera) Performance Review by Mr. Michael Fitzgerald and Ripal Mashruwala ("Ripal"). Mr. Patrick Robinson ("Robinson") is not in a position to challenge their judgment.

13. On July 11, 2017, in front of Robinson, at conference room, Ripal stated, openly and officially, it was Mr. Robinson who wrote the Performance Review.

14. Robinson is a co-author of the 2017 KRA Review. As such, he defeated himself when presenting contrary arguments in the 2017 Notice and Letter of Warning.

15. I was hired by the university in 2008. Since then, I received positive work performance review every year from 2009 to 2017.

16. As I repeatedly stated, all events are hardly relevant to evaluate the fraudulent nature of the 2017 Notice and Letter of Warning as long as they happened before May 19, 2017- the creating date of the KRA Performance Review where my good work evaluation had already documented.

17. Also, as I repeatedly stated, all events are hardly relevant to evaluate the fraudulent nature of the 2017 Notice and Letter of Warning as long as they happened after October 16, 2017-the issuing date of the 2017 Notice.

18. As I stated in Response of the 2017 KRA Review: several years ago when a Data Administrator Chad Turner (Male, white, younger and higher-paid) quitted in June of 2013, I took over all his job responsibilities and later I was assigned more job duties.

19. It is on the record after Chad Turner quitted, because of the extremely heavy workload, I had to give up 19 days of vacation time to do the work in the office without any compensation, and without any appreciation, because of my gender, race, age and national origin.

20. As I stated in Response of the 2017 KRA Review: When Kent Roberts and Janet Johnson left the Department in 2014 and 2015 respectively, Ripal commented: without them, we both had done the job better, faster and more efficient. It is a fact that no one replaced Janet (Younger, white, higher position and better paid), and I started assuming or absorbing all or most of her responsibilities. As such, I have an extremely heavy workload.

21. After Kent Roberts and Janet left the Department in 2014 and 2015 respectively, It is I who show Ripal the queries and databases in the Department, including how to run the Month-end query-set. Ripal (Male and younger) was later promoted to be my immediate supervisor. One year later Ripal was promoted to the Head of Operations and his wages were doubled.

22.  Before Kent Roberts and Janet left the Department, some financial reports were absurdly wrong. This is one of the reasons I was hired in 2008 to do a job.

23.  With short of three employees doing the work in the materials department, my workload has been so heavy that I have to spend my vacations to do the work sometimes in the office, or, work at lunch time, or, I have to keep working for extra hours in the afternoon.

24.  No other employee is dumped such super heavy workload like this in the department. The disparate treatment among employees in this respect demonstrates stark discrimination based on gender, race, age and national origin. And it is a brazen violation of the Equal Pay Act.

25.  After Chad, Kent Roberts and Janet left, most people in the department, including Mr. Fitzgerald received substantial pay raise and/or promotion.

26.  I became one of the few without promotion or pay-raise in the department since Chad, Kent Roberts and Janet left. This lasts for years until a Complaint with EEOC was filed, simply because of my gender, race, age and national origin. Even as of this day, my salary is still much lower than that Chad or Janet had when they worked for the department years ago. And this is a clear demonstration of continues and ongoing willful violation of the Equal Pay Act.

27.  Also, it is a fact which can be easily confirmed that Mr. Michael Fitzgerald and Mrs. Fitzgerald frequently request me to performing technically challenging work directly. Their assignments have to be taken as first priority, and added to my already extremely heavy load.

- 5 -

28.  After I was hired in 2008, I did most or a lot of job on database management and processing for Mrs. Mary Fitzgerald.

29.  Mrs. Mary Fitzgerald had been working for another department of the hospital, and she is the wife of Michael Fitzgerald, the Head of Material Management Department.

30.  Mr. Fitzgerald knew or should have known that I routinely developed databases and provided complicated reports. And routinely I did most or a lot of job on database management and processing for Mrs. Mary Fitzgerald.

31.  Beyond dispute, neither Robinson nor Ripal can do the job Mr. Michael Fitzgerald and Mrs. Fitzgerald assigned to me directly.

32.  It is on the record Mrs. Fitzgerald asked me to do some technical work for her as always, even just before she left the university in August of 2017.

33.  It is on the record that neither Mr. Fitzgerald nor Mrs. Fitzgerald has complaint about my work performance even once for the past nine years. Here, Robinson is not in a position to challenge their judgment, their trust in my technical capability and good work performance.

34.  Robinson can hardly evaluate my work performance when he has no idea about my workload. But he fabricated bogus accusations constantly, starting in March of 2017.

35.  As comparison, a vivid example can be given here: during the month of March, 2017, I had multiple projects at hand, I had to work on several database and queries development, and produced reports for IBuy-go-live, which is the priority in the department. At the same time, I also worked on month-end queries and Vendor-mate issues and other routine works. All these are on the email records (emails cc'ed to Ripal):

- 6 -

a. Director Fitzgerald email: Tuesday 3/14/2017 10:20 am

b. Director Fitzgerald email: Monday 3/20/2017 12:53pm

c. David Girard (Director of Purchases) email: Wed. 3/15/201710:29am

d. Bardo Sosa (Contract Manager ) email, re: Vendormate back up from 3/13/2017-3/29/2017: sent on Wed 2/8/2017

e. Email from me on 7/19/2017 at 8:28 am, (re: as of July, 2017 Patrick Robinson still does not know which queries to run for the month end/year end reports).

36. In 2017, Robinson failed to list a single occasion when any of internal and external customers/vendors, which are in huge numbers, who had presented one negative feedback or complaint about the financial reports, after Kent Roberts and Janet left the Department. This fact alone will beat Robinson's deliberate false arguments about my good work performance and the correctness of the subject query-set.

37. Here, Robinson shall be required to produce all the projects Mr. Michael Fitzgerald and Mrs. Fitzgerald assigned to me directly in the past five years; and I invite Robinson to list any and all of those he can do anything about.

38. The indisputable truth is Mr. Michael Fitzgerald and Mrs. Fitzgerald confirmed my good work performance by their actions, their words, and their writings for several years from 2009 to August of 2017 when Mary Fitzgerald left the university. As such, Robinson is not in a position to argue otherwise by false concocted accusations.

39. It is natural for people to ask how Robinson has the capability to evaluate my work performance when he lacks basic technical skills, and when he has no idea about my accomplishment, and when he pretended not knowing my extremely heavy workload. The answer will be obvious.

- 7 -

40. From 2014 to this day Robinson just learnt how to run one or two query-sets from me, but he failed to present a single correct financial month-end report of his own.

41. In the 2017 Notice, Robinson attached a March 9, 2017 email, from Director Fitzgerald sent to Ripal, which indicated Ripal did not know what the Department required him to produce by criticizing him "cannot give line item detail." This further demonstrates Robinson is willingly and knowingly to attack anyone, directly or indirectly, by all tricks and false arguments, in order to get promoted or consolidated a promotion.

42. Lacking basic technical skills, Robinson has no other choice but attacking a superior and/or a subordinate by trick and trap, directly or indirectly, in order to secure a position, get or consolidate a promotion, especially in a university environment.

43. It is a plain fact that Robinson has always been seeking a target to attack in order to achieve his wild ambition with limited technical capability. As a result, I became an easy one because of my gender, race, age and national origin.

44. Before and on February 1, 2018, I was imposed with more multiple extremely challenging and urgent assignments. For example: a new Item Discrepancy Query shall be created for Assistant Director Kendra Pitts and others.

45. Just before February 1, 2018, in a conference, at the presence of several directors and managers, Robinson asked me when I could finish creating the Item Discrepancy Query, everyone in the room started laughing at him. Mr. Robinson knew well why that happened: all participants there knew Robinson lacked basic knowledge of the complicated project but he already started figuring out how to frame me again.

46. It is a fact that Robinson became furious but he dared not to confront other people laughing at him but vented his rage on me by harassing, bullying me further, and interrupting my work all the time.

47. It is a fact Robinson has a habit to call for a meeting but claim the meeting is over one or two minutes after I showed up. As such, he is not only bullying, harassing and framing me as his routine, but also, by doing so, he is tarnishing the reputation of the Department and the University, and he is wasting tax-payers' money.

48. Before and on February 1, 2018, I was imposed with multiple extremely challenging and urgent assignments. Here is another example: I had to submit Medline Items Counts to the department head Michael Fitzgerald and Director of Purchases David Girard. This should be the priority of all assignments. This can be verified from communication between Mr. Fitzgerald and me on January 31, 2018.

49. Robinson might ask why Fitzgerald contacted me directly, now and then, without his knowledge. The answer is simple: First, the assignment was technically challenging and time consuming. Second, the requirement was urgent. There is no time to waste. Third, Mr. Fitzgerald was well aware of Robinson lacked the basic technical knowledge of the assignment.

50. Without argument, I submitted correct result of the Medline Items Counts on time to Mr. Fitzgerald, while another person did not meet the deadline and presented an incorrect result.

51. In comparison, after constant shouting and yelling, with frequent interruption and intimidation, Robinson finally can produce a stack of printout for the 2018, May 14 Notice. But he is the same person who argued it only takes ten minutes to generate a

-9-

report. And he failed to show a correct one ever since. By doing that, Robinson presented a vivid proof: while I was doing an outstanding and excellent job with extremely heavy workload in a hassle environment, he would spend a lot of his energy and work time to make trouble out of nothing, or, seek and create all opportunity to attack me in order to get another promotion and to receive another pay-raise.

52. Since Robinson repeatedly mentions the possibility of an audit as the basis of his false arguments, he has the duty to explain why the department was audited in 2016; and what was the result.

53. It is a fact that the audit team did not and cannot find any error in the queries, databases, and financial information generated from these tools I developed.

54. It is a plain fact that the audit team had never found any mistakes or error from all financial reports I submitted.

### D. Repeated False Arguments and Unlawful Suspension Cannot Cover up Continuous illegal employment Practice and Brazen Retaliation

55. After October 16, 2017, the date of the 2017 Notice, Robinson became desperate to create something, or anything, by all means and tricks to justify the Notice. His effort shall be in vein, because all his wanton arguments will be irrelevant. That is what the phrase meant: "fraud beyond any cure."

56. It is a common knowledge a continuous false argument is always false, no matter how many times it is repeated.

57. The May 14, 2018 Notice cannot change the falsehood nature of the 2017 Notice and Letter of warning.

58. The May 14, 2018 Notice is an affirmative proof that a calculated scheme already started in 2017 to deprive of my work opportunity, step by step, pretext after pretext, in order to fire me or force me to leave, one way or the other, because of my gender, race, age and national origin. It is never just about a Letter of Warning from the start.

59. It is beyond any doubt Robinson committed fraud knowingly and willingly in 2017. His current attempts and efforts to cover it up will be futile, no matter how many additional frivolous or false arguments he will present.

60. It is a common knowledge any judgment procured by fraud has no binding effect whatsoever. A collection of false arguments will remain false forever on the record. And a continuation of fraud is still a fraud.

61. Robinson does have a duty to produce the record and/or transcript of the videoconference to clarify all his plain false or misleading testimony for the Step-three grievance hearing.

62. As repeatedly pointed out, the 2017 Notice and Letter of Warning are the tool designed in retaliation for challenging, exposing, and reporting continuous illegal employment activity, including but not limited to sexual harassment, discrimination based on gender, race, age, national origin, and willful violation of Equal Pay Act.

63. On May 19, 2017, Ripal and Robinson wrote "Yu Zhan provided training to the other IT associates to use existing queries. She did a good job." See Performance Review last

- 11 -

modified on July 11, 2017. Such evaluation was approved by Department Head, Mr. Michael Fitzgerald.

64. On May 19, 2017, Ripal and Robinson wrote "Yu Zhan is responsible for completion and submission of reports such as Action of OI and patient log, which she does in a timely manner. She works with minimum supervision." See Performance Review last modified on July 11, 2017. Such evaluation was approved by Department Head, Mr. Michael Fitzgerald.

65. On May 19, 2017, Ripal and Robinson wrote "Yu Zhan has been respectful to vendors and co-workers. She is punctual and have (sic.) a very good attendance record." See Performance Review last modified on July 11, 2017. Such evaluation was approved by Department Head, Mr. Michael Fitzgerald.

66. On May 19, 2017, Ripal and Robinson wrote "Yu Zhan maintained our databases and queries. She did a good job producing reports for purchasing value analysis and accounts payable departments." Such evaluation was approved by Department Head, Mr. Michael Fitzgerald as well.

67. In March of 2017, I was demanded to train others in the Department. It was part of my job to instruct and demonstrate how to run the Month-end query-set under and in additional to other heavy work load. Both Ripal and Robinson were participants.

68. There is no precedent in the Department or anywhere else to require me, an ordinary employee, to train my newly-promoted supervisors on how to do part of my job for several months.

69. The department head, Mr. Fitzgerald knew or should have known the training process.

- 12 -

70.   It is on the record, in my response to the 2017 KRA Review on July 10, 2017, I explicitly

       exposed and challenged the illegal employment practice, including but not limited to

       sexual harassment and other personal wrongdoings by Robinson, and continuous

       discriminative treatment of employees in the department, as well as willful violation of

       Equal Pay Act.

71.   It is on the record, in my response to the 2017 KRA Review on July 10, 2017, I wrote: "In

       the past few months you (Ripal) mentioned Ms. Janet frequently. It seems to me you

       (Ripal) forgot negative comments about her from yourself and other managers. When

       Janet issued a warning to me for no proper reason at all on Chinese Spring Festival,

       people reacted as 'this is Janet's way to say happy Chinese New Year." The fact is Janet

       did not and could not argue it was an action of discrimination based on my national origin

       when Janet and Aida Sanchez (an officer from Human Resources Department) arranged a

       hearing about the so-called verbal warning on the date of Chinese Lantern Festival.

72.   Also in my response to the KRA review, I wrote: "It is a routine for Robinson to seek all

       and every opportunity to enter my cubicle, approach me in front and behind my back,

       with or without my notice, with or without any excuse; sometimes, I realize he is just

       behind my back by hearing breath noise. I am in shock, and I tell him I am scared;

       sometimes, when I am working, Robinson comes from nowhere I know of, surprise me

       by trying to grasp the mouse I am using, and claiming he wants to show me something."

73.   In my response to the KRA review, I wrote: "At the beginning I tell him (Robinson)

       politely he cannot do that. But on every occasion later I have to say "Leave me

       alone!""No!" "Stop!" "Back off!" And on each work day I become more and more

       nervous and in constant fear he will do the same thing again and again."

74.     Also in my response to the 2017 KRA review, I stated: Robinson wrote "before leaving your worksite, you must seek approval." It is a routine for Robinson to demand me to receive permission before hand whenever I leave my cubicle, even when I go to washing room for several minutes.

75.     Further in my response to the 2017 KRA review, I stated: "But more outrageous thing is that he would follow me, watching I enter and get out the washing room, he would follow me again until I return to my desk."

76.     I believe Robinson's such acts intended to inflict severe emotional distress, or he should have known that there were high probability that such personal wrongdoings would do so. And as a result, I suffered severe emotion distress.

77.     I believe Robinson's such acts are in his individual capacity whenever he sexually harasses an employee, whenever he committed fraud, whenever he defamed others and whenever he frames, intimidates and bullies a subordinate in order to intentionally inflict emotional distress. All his personal wrongdoings had already brought the reputation of the university into disparate.

78.     As of today, Defendant did not provide any evidence to refute my response to the 2017 KRA Review.

79.     On July 10, 2017, Department Head, Mr. Michael Fitzgerald knew, by writing, that I felt I was sexually harassed, and he forwarded my email to Danielle Earls from Office of Access and Equity, and instructed me to contact Ms. Earls directly in order to address the issue of alleged wrongdoings by Mr. Patrick Robinson. But later on Mr. Fitzgerald did not take any effective measure to prevent future harassment in any and all forms.

80. At 11:20 am of July 18, 2017, following the instruction from Mr. Michael Fitzgerald, I informed Ripal and Robinson that I had a scheduled meeting at 2:30 pm with Office of Access and Equity.

81. Robinson wasted no time to raise several nonsensical questions to harass me as retaliation by sending me emails at 12:30 pm on July 18 and at 8:21 am on July 19 of 2017.

82. On July 19, 2017, Ms. Danielle Earls indicated she would provide an update to me.

83. It is on the record Robinson and his superiors did not or failed to respond my repeated complaints with support of any fact.

84. I believe such conducts from Robinson are extreme and outrageous. He and his superiors knew or should have known that emotion distress was likely the result of such wrongdoings and those conducts were beyond any human decency. But there was no concrete and specific measure taken to prevent them from happening again and again. As a result, I suffered humiliation, embarrassment, frustration, and emotional distress, which a reasonable person could not expected to endure.

85. Intentional Infliction of Emotion Distress shall never be allowed in work environment, especially in a public university. But it is on the record Robinson's superiors did not or failed to take any measure to stop such sexual harassment and illegal activities.

86. On October 16 of 2017, a Pre-disciplinary Action Meeting Notice ("Notice") was cooked up with false accusations and false argument, as a tool of retaliation.

87. As a substantive matter, the Notice and its pile of attachments failed to provide any single event happened between May 19, 2017 to October 16, 2017, which was related to, or, in support of Robinson's false accusations and false arguments.

- 15 -

88.  As a procedural matter, Robinson was trying to concoct a false accusation first on October 16, 2017 in the Notice, then, to fabricate false or irrelevant arguments later in support of his fraudulent and illogical position. Such effort shall be futile.

89.  The event sequence and the timing of the Notice demonstrate retaliation is the sole motive and purpose, after I exposed and challenged illegal employment practice in the department.

90.  From December 1, 2017 to December 6, 2017, with email communication with me, Robinson **did not** argue there were two or more set of queries in use to produce a monthly financial report; and he **did not** argue the correctness of the reports as he did before.

91.  From December 1, 2017 to December 6, 2017, for several days, the only argument about the subject query/queries Robinson raised was how much time was needed to generate a Month-End financial report.

92.  But in his letter dated December 4, 2017, addressed to the Union as a response to Step One grievance, Robinson presented deliberate false material argument by writing " Her report was not run from **the one query as directed**, ---". (Emphasis added).

93.  The December 4, 2017 response from Robinson provided a vivid proof that, as a routine, he always fabricates new false material arguments to cover up his old ones.

94.  On May 3 2018, I filed a complaint on the subject matter with EEOC. Robinson, Aida Sanchez ("Aida") and their confederates knew or should have known the filing on May 14, 2018 or on May 30 2018.

95. When the case was under EEOC investigation, Robinson, Aida and their confederates issued another fraudulent Notice on May 14 2018 for May 30, 2018 hearing anyway as a blatant retaliation.

96. The May 14, 2018 Notice cannot change the illegal retaliation nature of 2017 Notice and Letter of warning. It is indeed another round of retaliation.

97. It is on the record, in the 2017 Notice, Robinson fraudulently argued alleged negative Impact on "The hospital accruals for the month of March of 2017." But at 11:40 am of March 20, 2017 he failed to challenge my assessment "All queries created the month-end report are working properly." The irony here is: it is Robinson himself offered such evidence in the Attachment of his fabricated 2017 Notice.

98. After a grievance was filed on November 29, 2017, Robinson wasted no time to intensify willful retaliation upon me, and fabricating more blatant false arguments.

99. As record shows, on December 6, 2017, I sent an email to answer Robinson's latest bogus arguments and false accusations. The result is expected: facing undisputable facts, he failed to respond with one single word ever since.

100. After the Step-two grievance was filed on December 19, 2017, Robinson approached my cubicle, a hysterical burst of fury started with shouting and yelling. I politely asked him to stay away from me and return back to his own worksite. But he barked "I will stay here as long as I like!"

101. In the past year, a pattern became crystal clear: whenever I confronted his personal wrongdoings, whenever I exercise my right to report illegal employment practice, Robinson will knowingly and willingly retaliate by fabricating false accusations, starting

- 17 -

misleading or downright false arguments, shouting and yelling, and defaming me inside the department.

102.  The 2018 May 14 Notice is an indisputable evidence of continuous and intensified retaliation. The presiding person of the hearing has the burden to show how this is allowed to happen.

103.  The May 14, 2018 Notice is a vivid proof that Robinson can never admit and resign himself for his failure. It is a continuation of blatant fraud and stark intensified retaliation.

104.  The May 14, 2018 Notice is an affirmative proof that a calculated scheme already started in 2017 to deprive of my work opportunity, step by step, pretext after pretext, firing me or forcing me to leave, one way or the other, because of my gender, race, age and national origin. It is never just about a Letter of Warning from the start.

105.  It is on the record, before and at the 2018 Step-three grievance hearing, Robinson tried and failed to elaborate all the arguments and the printout in the May 14, 2018 Notice. As such, he cannot recycle the same to fabricate further bogus accusations after April 27, 2018.

106.  The truth is Robinson cannot use irrelevant and misleading arguments to support his false accusations fabricated in 2017 before April 27, 2018, certainly he shall not be allowed to use the same to justify his continues illegal activity.

107.  Also it is on the record, Robinson failed to list even a single event occurred after April 27, 2018 to support his latest accusations and arguments in the May 14, 2018 Notice. The

- 18 -

frivolity is beyond any doubt. And indeed, it is another round of stark illegal retaliation; it is another product of continuous fraud.

108. It is noteworthy that after presenting piles of paper arduously and improperly created with ill intent for unlawful purpose of retaliation and harassment, in two years, Robinson still refuses to answer which query-set he has been using to generate the financial reports, and who developed the subject query-set, and where are other query-sets he repeatedly alleged of their existence.

109. It is noteworthy that after a lot of talking, after presenting piles of paper in two years, Robinson concealed how he did in harassing, framing me, shouting, yelling at me as a routine. Again, such conduct from Robinson is extreme and outrageous. He and his superiors knew or should have known that emotion distress was likely the result of such wrongdoings, which beyond any human decency. As a result, I suffered exhaustion, humiliation and embarrassment which a reasonable person could not expected to endure.

110. On March 7, 2018, at about 10:40 am, Robinson demanded me going to the conference room with him alone. Considering his history of sexual harassment, yelling and shouting, I politely asked him to discuss anything by email communication first. But he said "I am not sending you email. You need to go to conference room right now!" Few minutes later, he came to my cubicle again, threatened me and barked: "You are not going? I will file a charge of contempt!"

111. On March 7, 2018, in the conference room, Robinson declared the meeting was over within one or two minutes at most, after realizing he cannot frame me up again as before. But this incident showed his ill intention to bully, harass and frame up an employee as happened before. Also on the same day, several minutes later, Robinson came to my

cubicle again, requested another meeting, he asked me to show him how to run the same query-set again.

112.  It is noteworthy that, while shouting and yelling, Robinson threatened to file a charge of contempt against me. Here the questions arise: what is the basis? And where was his charge then? And where is the same charge now? It is no doubt his only purpose was to bully, harass me and inflict emotional distress upon me.

113.  It is beyond argument Robinson has never showed when and how he generates a correct month-end financial report.

114.  It is on the record that on June 8, 2017 Robinson stated he could not find the Year-end query-set for a whole day. If what he said was true, the question will rise: how could he evaluate others' work performance while lacking basic search technique?

115.  It is on the record that on June 8, 2017 Robinson stated he could not find the Year-end query-set for a whole day. If what he said was false, the question will rise: where is his credibility? What was his ill motive?

116.  It is on the record that on June 8, 2017 Robinson stated he could not find the Year-end query-set, as he always called it a "query" out of ignorance and arrogance; and within two minutes he could send me two emails. This is a clear indication he would make trouble out of nothing.

117.  After bullying and harassing me for a whole day on June 8, 2017, he would ask me whether I deleted it. The question will rise: what serious accusation he already concocted?

118.    Also it is on the record that Robinson kept silence ever since after I replied "I DID NOT DELETE ANYTHING". This single example clearly shows his sole purpose of doing those is to frame me with an ill intention.

119.    The record shows Robinson is in a habit to create hostile environment to make sure I have no chance to concentrate in work, or make it entirely impossible to do a job.

120.    It is beyond dispute no reasonable person can stand a constant fear of sexual harassment or any forms of torturous intimidation at work; no nervous employee can do a work when a supervisor such as Mr. Robinson would readily set up traps and cook up false accusations; and no one can endure frequent burst of yelling and shouting for no reason at all; and indeed, Mr. Johnson created a hassle work environment in order to routinely and intentionally interrupt my work and inflict emotional distress.

121.    Further, the record shows Robinson is in a habit to present ridiculous irregularities. Then he would ask provocative, frivolous and hypothetical questions in order to interrupt my work.

122.    Further, in the department, it is not abnormal to assign me a task on the last day of a deadline or the deadline was already passed. From these experiences, I have to conclude: all these are setups and traps.

123.    It is beyond dispute that any and all irregularities must be designed by a person if they are not reproducible or repeatable month after month. It is the duty of the creator, not anyone else to explain what the motive was; what was done and why it happened.

124.    It is beyond dispute that some people must have motive, means and opportunity to create any and all irregularities. The University shall have the resources to find the person(s) responsible.

125.    Without any doubt Robinson is very skillful in framing others as a routine by creating not only frivolous, hypothetical but also outrageous and provocative insinuation. His ill motive is always there.

126.    It is on the record from 2014 to 2017, I informed Robinson how to run the subject query-set step by step, and provided numerous training and demonstrations for months. But on December 1 of 2017, at 11:11 am, he would argue "It takes less than 10 minutes to run a single report!" The requirement is absurd. Since then, he fails to explain what his ill intention is; and he failed to speak out what accusation he is cooking.

127.    By arguing "It takes less than 10 minutes to run a single report!" and demanding me to do the same, Robinson is not only seeking but also creating every opportunity to frame me up, and fabricate or justify his false accusations.

128.    On February 26, 2018, Robinson wrote an email to me by copying my instructions to him in 2014 as his only "directive" ever issued, this absurd act was an clear precursor that he was going to cook up something and he would launch another around of twisting facts and fabricating misleading arguments while facing a determinative and immediate defeat in the grievance process.

129.    In February 27, 2018 email, I raised several simple but material questions, and demanded Robinson to provide straightforward answers. But he simply cannot do that.

130.    The February 27, 2018 email was cc'ed to Mr. Fitzgerald. As such, he knew or should have known Robinson presented several material false arguments on the subject matter.

- 22 -

131.    It is apparent to me Robinson has been creating a hassle work environment, If a setup or trap would not work, he will seek another one.

132.    In September of 2016, Mr. Robinson indicated, in writing, he wanted to join me in the database and action-oi work. At that time he did not know much about databases and queries in the Department.

133.    As early as 2014, I provided detail instruction to Robinson (Male and younger) how to run the Month-end query-set. After 2016, I provided extensive training and demonstrations to him for months.   Later I was informed he became one of my supervisors although he was lacking the basic technical knowledge and skills.

134.    From 2012 to 2017, no one in the department has any doubt about the usefulness and correctness of the subject query-set.  Robinson did not and cannot show any evidence to dispute such assessment. The department head knew this very well.

135.    With laborious effort Robinson failed to challenge the correctness of all month-end financial reports from 2012 to September of 2016. With laborious effort Robinson failed to challenge the correctness of all month-end financial reports from September 2016 to February 2017. Therefore it is he who has the burden to explain what happened and how he can do so in April of 2017.

136.    Also it is on the record Robinson failed and cannot challenge the correctness of the financial reports I submitted for March and April of 2017, although he presented misleading arguments on this for months,

137.    Inconsistent or incorrect reports will be generated every month, if there were defects in the subject query-set as Robinson falsely argued that the query-[set] was not working properly in April of 2017. Robinson has the burden to explain why he failed to present

- 23 -

any evidence to support his false argument. As such, he has the legal responsibility to submit all related printouts of his laborious work for each and all months of 2017.

138. It is on the record that from March of 2017 to this day Robinson created one fraudulent argument to cover up the old one, then, he repeated the same flip-flap in a cycle. But he failed and cannot present printouts of record for each and all months in support of any of his forever changing false arguments. The irony is Robinson cannot challenge and argue the basic that a tested query-set in a computer network will produce consistent results, either correct or incorrect, for every month and every year.

139. The simple logic here is that Robinson can flip-flop his false positions and he can present self-conflicting statements at will; but a query-set will perform consistently, providing results, either correctly or incorrectly for each and every month. This will defeat all Robinson's fraudulent arguments in the past, at present and in the future.

140. If Robinson really believed there was defect in the subject query-set in March of 2017, he would have argued all and any allegedly inconsistency or incorrectness in all the reports from the Months of May to October of 2017. But he did not. And he cannot.

141. It is indisputable that if anyone argues he can generate a correct report using a query-set but he cannot do the same some other months, and presented any irregularities, then, the conclusion must be either he is lying with ill motive or he is lacking basic technical skills.

142. Also it is equally indisputable that if anyone claims he can generate a correct report using a query-set but the same person contends he failed to do the same because of the

- 24 -

alleged existence of multiple query-sets to perform a single job, the conclusion must be either he is lying with ill motive or he is lacking basic technical skills.

143. It is an indisputable fact, as of today, Robinson has failed to show me a single correct month-end financial report he generated since September of 2016.

144. Further, when Robinson argued the month-end query-set was defective, he implied his manager Ripal failed to do his job from 2014 to 2017, and he, Robinson, is more qualified to take Ripal's position and get a substantial pay raise. That is odd.

145. Furthermore, when Robinson argued the month-end query-set was defective, he implied the department head Mr. Fitzgerald was not qualified in knowledge and skills to hold that position. That implication is very strange indeed.

146. It is Mr. Fitzgerald's words that he will not ask others to do a work if he cannot do it. For more than five years, Mr. Fitzgerald knows the subject query-set very well.

147. Robinson is challenging Mr. Fitzgerald's technical skills and credibility in the Notice when arguing "in her (Zhan's) absence, no one else could produce it."

148. Also in the Notice Robinson provides indisputable evidence that fraud was committed knowingly and willingly, when arguing "in her (Zhan's) absence, no one else could produce it."

149. The department head Mr. Fitzgerald knew or should have known Robinson's arguments were false from the start in 2017.

150. The department head Mr. Fitzgerald knew or should have known all Robinson's accusations against me were false.

151. The truth is: after Robinson learnt something from me about the subject query-set, from June of 2014 to March of 2017, he made a scandalous farce for months. The correctness and the usefulness of the subject query-set shall not be at issue in the first place. As such, it is clear who should be blamed for the wasting of time. And if any irregularities occurred, conclusion can be readily reached who is responsible or contributive for their creation.

152. It is beyond dispute I have no obligation to explain why and how irregularities appeared as they are fabrications by others; also I have no obligation to answer Robinson's provocative or hypothetical insinuations.

153. As of today, Robinson failed to pinpoint how, why and where all the irregularities came out since he learnt something from me about the subject query-set. He should know all the answers including who was the culprit better than anyone else.

154. Further, from March to November of last year, Robinson spread slanderous rumors about me all the time in the Department and beyond.

155. On May 3, 2018, I filed a complaint with EEOC, Robinson wasted no time to start another round reckless retaliation by issuing a May 14, 2018 Notice.

### E. Persistent Unethical and Unlawful Misconducts from Mrs. Aida Sanchez

156. I believe Mrs. Aida Sanchez (Aida) shall recuse herself from presiding the hearing, and the notice was issued on May 14, 2018.

157. It is on the record Aida participated in drafting the Notice dated October 16, 2017. As such, it was improper for her presiding that hearing in 2017.

158. Aida knew or should have known the frivolous or fraudulent nature of 2017 hearing Notice.

159. During the March 29, 2018 Step-three grievance hearing, at the video conference at the University System level, Aida testified there were discovered two queries to generate month-end financial reports. At the very least, it was improper and unethical for her to act as a local hearing officer, an accuser and a witness at the same time.

160. Indeed, Aida was not in a position to testify anything in the subject matter. Even for this reason alone Mrs. Aida shall recuse herself from presiding the May 30, 2018 hearing. But she stayed at the hearing as a participant on the stage and behind the scene.

161. Aida shall have a duty to produce the record and/or transcript of the video conference to clarify her testimony, and explain why it is proper and ethical for her to offer a testimony if she really believes so.

162. During the Step-three grievance hearing in 2018, Ms. Aida testified there were discovered two queries to generate month-end financial reports. She failed to realize that in the department, it needed a set of queries, not a single query to do the job, as she erroneously contended. As such, lacking such basic technical knowledge and fundamental information, it is improper for Aida to testify anything on the subject matter.

163. Mrs. Aida did not know how to use the subject set of queries to generate financial reports, she never run it personally, not even once. As such, she was hardly technically qualified to testify.

164. During the Step-three grievance hearing in 2018, Ms. Aida failed to provide the file names and paths of two queries or two sets of queries she falsely argued. And she will never be able to do such a thing because there is only one set of queries in use to generate Month-end report.

165. During the Step-three grievance hearing in 2018, Ms. Aida failed to explain why there were alleged two queries or two set of queries in existence as she falsely argued. Here, Mrs. Aida shall know insinuation with ill intention with malice, groundless speculation or blatant false arguments can never be a basis for cooking up a serious accusation.

166. During the Step-three grievance hearing in 2018, Mrs. Aida testified there were discovered two queries to generate month-end financial reports. That is a false accusation or a false argument per se, as she failed and dared not to state a claim or present any cause of action, also she failed and dared not to clarify any of its close or remote connection with other bogus allegations.

167. Indeed, Mrs. Aida in concert with Robinson did not allege any cause of action, motive, evidence, causation or correlation to any their accusations and purported negative impact with their invented "serious offence."

168. It is very strange and unacceptable that a Human Resources officer in a public university such as Aida Sanchez can insinuate an alleged serious offence with no cause of action, no motive, no causation, no evidence and no correlation whatsoever with any other allegations or possible alleged negative impact. The conclusion must be such an argument is another product of fraud.

169.  During the Step-three grievance hearing in 2018, Ms. Aida testified there were
      discovered two queries to generate month-end financial reports. The malice motive of
      such argument from Aida is undeniable, and its falsity is obvious.

170.  Further, the university has the resources and technical ability to check out if there were
      really two or three or more sets of queries for a single task, i. e. generating month-end
      financial reports. But both Ms Aida and Mr. Patrick Robinson failed to present any
      evidence. A false argument will certainly remain as false on the record.

171.  During the Step-three grievance hearing in 2018, Ms. Aida testified there were
      discovered two queries to generate month-end financial reports. She contended that
      was a serious offense but she did not even have the courage to speak out what alleged
      ill motive and what alleged negative impact she was contending. That is ridiculous. And
      she has the burden to present evidence, but she failed then and she fails now and she
      will fail in the future.

172.  It is common knowledge that, for a fair hearing and due process, under no circumstance,
      an accuser, ignorant and arrogant as Mrs. Aida was with malice intent, should be
      allowed to act as a witness and a judge or a decision-maker at the same time.

173.  It is fact the subject set of queries was developed by me in 2012. The Head of the
      Department Mr. Michael Fitzgerald knew this well.

174.  Mr. Michael Fitzgerald knew or should have known how to run the subject query-set
      before March of 2017.

175.  Mr. Michael Fitzgerald knew or should have known the technical detail of the subject
      query-set before March of 2017.

176. It is a plain fact both Ms. Aida and Robinson failed to notice Fitzgerald in writing, or contact security, if they really believe that there were two or three different sets of queries to perform a single task, although they insinuated that was a serious offense.

177. From 2012 to 2017, the subject query-set has been generated correct financial reports. Mr. Michael Fitzgerald has never doubted on the correctness and usefulness of the query-set, either vocally or in writing. Both Aida and Robinson failed to list a single occasion to show otherwise.

178. Aida and Robinson pretended they know better about computer science than the department head, but they are not. Anyway, both Aida and Robinson are not in a position to evaluate the work performance, technical skills of the department head; they are not in a position to challenge his judgments on the correctness of the query-set.

179. Also Aida, Robinson or anyone else, all of them are not in a position to discard or rewrite evaluations on my good work performance from 2009 to 2017 which had already affirmed and approved by all immediate supervisors and the department head.

180. Further, both Aida and Robinson failed to explain why they failed to show a consistent performance of the subject query-set month after month. A query-set with defect will always generate an incorrect result. Ordinary people can see it through right away that both Aida and Robinson are presenting false arguments deliberately. The failure from both of them is fatal.

181. Therefore, Mrs. Aida did have a duty to present admissible evince to support her testimony. Before that, I believe it was improper for her to preside or participate in the May 30, 2018 hearing.

182. Further, when I as an accused raise an objection, Mrs. Aida has a burden to show how she can preside a hearing without prejudgment, prejudice or bias. Then, her superior or another Human Resource officer shall make a decision on this specific issue. But this did not happen, and Aida still participated the hearing, making decision on the stage or behind the scene.

183. It is a fact that Mrs. Aida failed to respond my allegations in writing ever since, although she knew that was improper or unlawful, she still stayed at the May 30, 2018 hearing, and she still participated the decision-making process. Under such special circumstance, I believe Aida had the burden to clarify, in writing, that she did have a legal authority to do so.

184. Further, Aida knew or should have known that the whole case was under EEOC investigation after May 3, 2018. As such, the May 14, 2018 Hearing Notice, the May 30, 2018 hearing, and the July 20, 2018 Suspension Notice are unlawful beyond any dispute.

185. And I firmly believe that the entire record of the case was tainted because of Aida's improper involvement, false arguments and bogus testimony.

## F. Material Issues and Statements of Fact in Regard of Unlawful Employment Practice Were Ignored or Covered-up in the Grievance Process at the University Before I Filed a Complaint with EEOC

186. On November 29, 2017, I noticed the Head the Department in writing for filing a grievance. He instructed that I had to file it through the Union.

187. Grievance is not about dispute between the University and the Union. Instead, it is between employer and employee.

188. The University of Illinois System did not send me Step-Two-Hearing date notice, nor did it inquire the reason of my absence according to the contract in Step 2(f), Section 2 Procedure of Article IX Grievance Procedure.

189. The Procedure says: Those present should include **as a minimum** the supervisor in the line of supervision over the grievant who has the most thorough knowledge of the circumstances surrounding the grievance, and **the grievant** and his/her representative. A member of the staff of the Human Resources Office should be available as a resource person.(Emphasizes Added).

190. The decision from the University of Illinois System (the "Decision") on April 27, 2018 ignores my position and statements of fact in regard of unlawful employment practice completely. That is demonstrated on the face of text.

191. The Decision failed to realize it needed a query-set containing several queries to generate a Month-End financial report. Not knowing the basic, its author did not know what she was talking about.

192. The decision says "on March 14, 2017, her supervisor, Patrick Robinson, was made aware that the Microsoft Access query (sic) used to produce the month-end accrual report was not working properly." This is a deliberate false statement from Robinson.

193. The Decision stated "this was discovered by an employee who was the back-up person for checking/running queries in Zhan's absence." Such argument is not a testimony from the hearing. This also indicates that neither the "back-up person" nor Robinson can run the query-set back in March 15, 2017. It is absurd if this can be a basis to blame others for their failure.

194.  The Decision failed to identify who was the "back-up person", failed to clarify where was him/her; failed to present what his/her qualification was; and failed to present where his/her testimony was. The truth is that such contention is not only hearsay, but also a deliberate false argument came directly from Robinson.

195.  The fact is, after about three years of training and demonstrations since June of 2014, Robinson himself did no better than the "back-up" person Silvina. This is typical for Robinson how to treat an employee, and he could always blame others for his own failure.

196.  Robinson did not and cannot show the "back-up" person Silvina how to run the query-set, whereas he argued several months later it only took ten minutes to do so.

197.  Robinson did not and failed to provide any reason why and how the "back-up" person Silvina entered and left the department.

198.  On March 14 of 2017, Robinson did not know, or pretended not knew how to generate a Month-end financial report using the subject query-set.

199.  Robinson failed and refused to show from whom he learnt how to run the subject query-set from March 14 to April 3, of 2017 and how he did it.

200.  At the meeting with Ripal and Robinson in the afternoon of April 3, 2017, I asked Robinson to provide the detailed excel file that he run, not to only draw a small box and filled with some numbers. Hiding something, Robinson got mad and said "you are not in the position to tell me what to do. I am not sending the excel file in detail."

201.  On April 3, 2017, Robinson's response was outrageous as I worked on database queries and data warehouse, without a detailed excel file, there was simply no way for me or anyone else to do the work. Now it is clear that, at that time, Robinson had always been trying to cook up false accusations against me.

202. It is a common practice from Robinson that whenever he contented his numbers are different from others, he would refuse to explain how, when, where and what he did to get the numbers, and sometimes, he even refused to answer what his numbers were.

203. The Decision stated: "Zhan continued to use two different ones." This is a repetition of deliberate false argument from Patrick Robinson and Aida Sanchez.

204. The first sentence in my June 2, 2014 instruction to Patrick Robinson and Ripal was "The **queries** are saved to network AP folder." (Emphasis added). It is a plain fact the Decision failed to notice that a query-set of several queries are needed to run a report.

205. Patrick Robinson and Aida Sanchez did not and cannot identify the file-names and paths or a fixed query-set they wantonly suggested, in addition to the two different ones they fraudulently argued in the grievance process.

206. Robinson and Aida did not and cannot elaborate what hiding serious accusation they made against me by falsely argued there were two or more query-sets in use for generating a month-end report.

207. It is indisputable such hiding serious accusation has no cause of action, no alleged motive, no evidence, no correlation to any other allegations and any alleged negative impact. It is indeed a false and scandalous argument.

208. The author of the Decision contented "The facts of the present case are straight-forward and indisputable." The existing record rejects such a downright false assertion.

209. The author of the Decision argued "Although they did not refute the events that led to the discipline, the Union and the grievant argued that the discipline is harsh in light of the circumstance." This is the only sentence the author talking about my position in this

case, but it is clearly invented by Ms. Celia Remillard herself, who was the author of the Decision. There is simply no record whatsoever in support such downright false contention.

210. Contrary to the argument by the Decision, my position has always been clear, affirmative, which cannot be twisted or distorted.

211. My multiple filings and submissions demonstrate the 2017 Notice is nothing but a production of fraud; and it is a tool for retaliation for challenging, exposing, and reporting continuing illegal employment activity.

212. The record shows: the Section of Analysis of the Decision is a collection of misleading arguments, fraudulent speculations, downright false statements and ill-intended inundations from Robinson, Aida and others. By doing so, they are putting the reputation of the university into disparate.

213. On June 22, 2018, a 2018 KRA Review was finalized, which was drafted by Ripal earlier.

214. On May 29, 2018, in my response, I pointed out the 2018 KRA Review is a continuous retaliation for challenging, exposing and reporting personal wrongdoings, discrimination based on gender, race, age, national origin and willful violation of Equal Pay Act; and it is an arduous attempt to cover up brazen illegal activities.

215. On May 3, 2018, I submitted a complaint to the EEOC.

216. It is on the record, after the May 30, 2018 Pre-disciplinary Action Meeting, within one and half month, no decision can be made by the Human Resources Department at western campus of UIC, because of the stark unlawful nature of the Notice, which in and of itself was a tool of retaliation, and it was an act challenging and defying the EEOC authority.

217. It is on the record, on July 20, 2018, when the case was still under EEOC investigation, a suspension for a week without pay was issued by the Human Resources Department of the western campus of UIC. That is in blatant and willful violation of Federal Statutes.

218. I firmly believe that the 2018 May 14 Notice, the May 30, 2018 hearing and the July 20 2018 suspension are all improper and unlawful, as they challenged, ignored, or undermined the legal authority of the EEOC.

219. Also the July 20, 2018 suspension notice failed to list a single event to justify its action which happened after April 27, 2018, the date of the "decision" issued; it failed to list a single event happened after May 3, 2018, the date a complaint was filed with EEOC. Instead, it recycles accusation and arguments which had already been raised during Step-three grievance hearing held on March 29, 2018.

220. Therefore, I believe the July 20, 2018 suspension notice is part of the reckless and blatant retaliation for challenging, exposing and reporting blatant illegal employment activity including but not limited to personal wrongdoings, discrimination based on gender, race, age, national origin, and willful violation of the Equal Pay Act.

### G. Conclusion

221. It is a reality that for years Defendant did not stop continuous and ongoing unlawful employment practice and brazen retaliation process, even after a complaint with EEOC had been filed on May 3, 2018. As such, a lawsuit became a must to prevent and deter more blatant illegal activities in the future at Defendant.

- 36 -

222.   Plaintiff believes Federal statutes must be complied with, and Defendant is doomed to

fail because it started a calculated retaliatory process solely relying on a pack of

deliberate false and self-conflicting arguments.

# Attachment III

## Prayer for Relief

Plaintiff Yu L. Zhan prays this Court to enter its judgment against the Defendant for:

A. an injunction declaring the Defendant committed retaliation for challenging, exposing and reporting personal wrongdoings and unlawful employment practice, including but not limited to sexual harassment, continuous and ongoing discrimination based on gender, race, age, national origin and willful violation of Equal Pay Act,

B. an injunction directing Defendant to withdraw the 2017 Pre-disciplinary Action Meeting Notice, the 2017 Letter of Warning, the 2018 Pre-disciplinary Action Meeting Notice and the 2018 Suspension Notice, and expunge all the related material from all the records;

C. compensatory damages;

D. punitive damages;

E. an injunction declaring Mr. Patrick Robinson committed fraud knowingly and willingly;

F. an injunction declaring Mr. Patrick Robinson committed sexual harassment and intentionally inflicted emotional distress;

G. an injunction declaring Mr. Patrick Robinson committed slander, libel and defamation;

H. an injunction declaring Defendant created hassle work environment by yelling, shouting, intimidation and harassment;

I. cost for the law suit, including but not limited to attorney fees if hiring a legal counsel becomes necessary;

J. other relief this Court deems appropriate.

EEOC Form '6' (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To | Yu Zhan<br>2913 S Union Avenue<br>Chicago, IL 60616 | From | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |  |
|---|---|---|---|
| EEOC Charge No | EEOC Representative | | Telephone No |
| 440-2018-05104 | Sergio Maldonado,<br>Investigator | | (312) 869-8129 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

| | |
|---|---|
| [ ] | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| [ ] | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| [ ] | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| [ ] | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| [X] | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
| [ ] | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge |
| [ ] | Other (briefly state) |

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_Julianne Bowman_      8-22-2018
**Julianne Bowman,**      (Date Mailed)
**District Director**

Enclosures(s)

cc:  **UNIVERSITY OF ILLINOIS AT CHICAGO**

c/o Caryn A. Bliss
Director
Office of Access and Equity
809 S. Marshfield Avenue, Room 717
Chicago, IL 60612

# Attachment IV

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA | |
| | ☒ EEOC | 440-2018-05104 |

| **Illinois Department Of Human Rights** | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Yu Zhan** | **(312) 225-4401** | **1950** |

| Street Address | City, State and ZIP Code |
|---|---|
| **2913 S Union Avenue, Chicago, IL 60616** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **UNIVERSITY OF ILLINOIS AT CHICAGO** | **500 or More** | **(312) 413-7500** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1801 W. Taylor Street, Chicago, IL 60612** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

*RECEIVED*
*AUG 15 2018*
*CHICAGO DISTRICT OFFICE*

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☒ NATIONAL ORIGIN

☒ RETALIATION ☒ AGE ☐ DISABILITY ☐ GENETIC INFORMATION

☐ OTHER *(Specify)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| | **08-15-2018** |

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began my employment with Respondent on or about December 1, 2008. My current position is IT Technical Associate. During my employment, I was subjected to sexual harassment and lower wages. I complained to Respondent. Subsequently, I was subjected to harassment, scrutiny, intimidation, discipline, negative performance reviews and suspension.

I believe I have been discriminated against because of my sex, female, my race, Asian, my national origin, Chinese, in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Equal Pay Act of 1963, as amended.

I also believe I have been discriminated against because of my age, 68 (Year of Birth: 1950), in violation of the Age Discrimination in Employment Act of 1967, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Aug 15, 2018** *(signature)* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| Date          Charging Party Signature | **Attachment V** |

Yu  L Zhan
2913 S. Union Ave.
Chicago, Il 60616
Tel: 312-225-4401
Cell: 312-885-0601
May 2, 2018

U, S. Equal Employment Opportunity Commission
Chicago District Office
500 West Madison Street, Suite 2000,
Chicago, IL 60661

Dear Sir/Madam.

I am filing a complaint against the University of Illinois with following charges:

1.  Retaliation for reporting continuing unlawful employment practice, including but not limited to sexual harassment, discrimination based on gender, race, age, national origin, and willful violation of Equal Pay Act;
2.  Some supervisors committed fraud, knowingly and willingly, by issuing a Letter of Warning based on false accusations and false arguments; and some managers participated, encouraged, or connive at those false accusation and false arguments in order to cover-up personal wrongdoings and illegal employment practice; and all material issues and statements of fact I raised were completely ignored in the grievance process;
3.  Some supervisors, knowingly and willingly, committed slander and libel.

Enclosed please find the statements of fact and remedies sought in the following documents:

1.  My Response to the 2017 KRA (Key Results Area) Work Performance Review, including my Preliminary Comments and Final Comments;
2.  My Written Statements for the Step Two Hearing;
3.  My Additional Facts and Comments for the Step Three Hearing, including Attachment I, II and III.
4.  My Comments on Mr. Patrick Robinson April 4, 2018 writing.

Please let me know if any other documents or information are needed for the filing.
Thank you in advance for your professional help.

Sincerely,

Yu l Zhan

Yu L. Zhan
Cc: Enclosures

# Attachment VI

```
                              CARDISS COLLINS
                          433 W HARRISON ST FL LBBY
                                  CHICAGO
                                    IL
                                60699-9208
                               1615000804
05/03/2018        (800)275-8777    4.44 PM
=========================================
=========================================
Product                    Sale      Final
Description                 Qty      Price

First-Class          1              $2.47
Mail
Large Envelope
   (Domestic)
   (CHICAGO, IL  60661)
   (Weight:0 Lb 7.20 Oz)
   (Estimated Delivery Date)
   (Saturday 05/05/2018)
Certified            1              $3.45
   (@@USPS Certified Mail #)
   (70180360000061650135)

Total                               $5.92

Credit Card Remitd                  $5.92
   (Card Name:Discover)
   (Account #:XXXXXXXXXXXX5710)
   (Approval #:00395R)
   (Transaction #:864)
   (Entry Mode:Chip)
   (AID:A0000001523010)
   (Application Preferred Name:
   Discover Credit)
   (Application Label:Discover)
   (PIN:PIN Not Required)
   (Cryptogram:9FAE7917A6F62CAA)
   (ARC:00)
   (CVR:1E0300)
   (IAD:0105608001000000 1E03000000000
   0000000)
   (TST:E300)
   (TVR:0000008000)

Text your tracking number to 28777
(2USPS) to get the latest status.
Standard Message and Data rates may
apply. You may also visit USPS.com
USPS Tracking or call 1-800-222-1811.

In a hurry? Self-service kiosks offer
quick and easy check-out. Any Retail
Associate can show you how.

All sales final on stamps and postage
Refunds for guaranteed services only
       Thank you for your business

       HELP US SERVE YOU BETTER

     TELL US ABOUT YOUR RECENT
          POSTAL EXPERIENCE

              Go to:
https://postalexperience.com/Pos

840-5606-0006-008-00027-22915-02

       or scan this code with
         your mobile device:
```



```
     or call 1-800-410-7420.
       YOUR OPINION COUNTS
```

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

CHICAGO, IL 60661

**OFFICIAL USE**

| | | |
|---|---|---|
| Certified Mail Fee | $3.45 | |
| $ | $0.00 | - 0804 - |
| Extra Services & Fees (check box, add fee as appropriate) | | |
| ☐ Return Receipt (hardcopy) | $0.00 | |
| ☐ Return Receipt (electronic) | $0.00 | Postmark |
| ☐ Certified Mail Restricted Delivery | $0.00 | Here |
| ☐ Adult Signature Required | $0.00 | MAY 3 2018 |
| ☐ Adult Signature Restricted Delivery | $0.00 | |
| Postage | $2.47 | 05/03/2018 |
| $ | | |
| Total Postage and Fees | $5.92 | |
| $ | | |

Sent To
U.S. EEOC Chicago office
Street and Apt. No., or PO Box No.
500 W. Madison St  5-2000
City, State, ZIP+4
Chicago IL 60661

PS Form 3800, April 2015 PSN 7530-02-000-9047  See Reverse for Instructions

7018 0360 0000 6165 0135

**Attachment VII**

Yu L Zhan
2913 S. Union Ave.
Chicago, Il 60616
Tel: 312-225-4401
Cell: 312-885-0601
July 21, 2018

U, S. Equal Employment Opportunity Commission
Chicago District Office
500 West Madison Street, Suite 2000, Chicago, IL 60661
Tel: 1-866-408-8075

Dear Sir,

Thank you very much for taking my case against the University of Illinois.

For your information and convenience, enclosed please find:

1. Written Statements for the May 30, 2018 Hearing, and
2. Written Statements of Fact and Analysis for the May 30, 2018 Hearing.

Please let me know if any other documents or information are needed.

Thank you in advance for your professional help.

Sincerely,

Yu L Zhan

Yu L. Zhan

# Attachment VIII