

RECEIVED

**IN THE UNITED STATES DISTRICT COURT** 2: 27
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION** U.S DISTRICT COURT

| | | |
|---|---|---|
| Yu L. Zhan, | ) | |
| | ) | 1:18-CV-7115 |
| Plaintiff, | ) | |
| | ) | Judge |
| v. | ) | Hon. Mary M. Rowland |
| | ) | |
| | ) | Magistrate Judge |
| Board of Trustees of University of Illinois, | ) | Hon. M. David Weisman |
| | ) | |
| Defendant | ) | |

FILED

FEB 26 2021

THOMAS G. BRUTON
CLERK U.S. DISTRICT COURT

### Plaintiff's Response In Opposition To
### Defendant's Motion for Summary Judgment

Plaintiff Yu L. Zhan, pursuant to Rule 56 of the Federal Rule of Civil Procedure and

Local Rule 56.1, respectfully submits this Response in opposition to Defendant Board of

Trustees of University of Illinois's motion for summary judgment.

### I.  Introduction

Plaintiff brings this action alleges that Defendant is in violation of U. S. C. §1983 under

the First and Fourteenth Amendments of U. S. Constitution; and Defendant violates the Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq*. (Title VII); the Age

Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*. (ADEA) and Equal Pay Act

of 1963 ("EPA"), 29 U.S.C. § 206 *et seq*. As discussed below, genuine issues of material fact

preclude the entry of summary judgment.

### II.  Factual Background

As Plaintiff's Response to Defendant's Rule 56.1(a)(3) Statement ("Resp") and her own Rule

1

56.1(b)(3)(B) Statement ("Stmt") make clear, Defendant's purported recitation of the facts mischaracterizes the record in this case.

**Plaintiff Was Hired As Academic Professional in 2008**

Plaintiff Yu L. Zhan responded to an advertisement in 2008, interviewed by Assistant Director Kent Roberts, IT group manager Janet Johnson, Assistant Director Grady Wheaton and another manager (Ex. A, Pl Aff. ¶25, Ex. E, Pl Tr. at 29:22-30:2, 30:19-24, 31:12-14.) Plaintiff was hired as academic professional – Database Management Specialist in December 2008 (Resp. at ¶ 8). At that time, the Materials Management Department (the Department) had an urgent need to enforce its functions of the IT group. Before Plaintiff was hired, Chad Turner worked for IT group in the Department. He is white, at least ten years younger, male, much higher paid than Plaintiff. (Resp. 49, Stmt. 31, 34.)

The IT group has a wide range of responsibilities, which included management of all databases in the Department; development of application software and training clerks in the Accounting Payable (AP) group for generating financial records. (Ex. A, Pl Aff. 26.) From 2009 to 2017, addition job duty was assigned by Director of the Department Michael Fitzgerald to Plaintiff to manage databases for Mrs. Mary E. Fitzgerald. (Ex. D1, Ex. D2.)

From 2009 to 2016, Plaintiff received positive job performance review every year from the Department, also Plaintiff had positive performance feedback from Mrs. Mary E. Fitzgerald, from 2009 to 2017. (Ex. E, Pl Tr. 85:12-13, Ex. D1, D2.) Defendant still withholds Mary E. Fitzgerald feedbacks regarding Plaintiff's job performance from 2016 to August 2017 as required by the Honorable Court. (Stmt ¶1; Ex. A, Pl. Aff. ¶1.)

**Patrick Robinson and Aida Sanchez Can Cook Up Any Absurd Accusation for Retaliation.**

In July of 2017, Plaintiff exposed and condemned sexual harassment committed by Patrick Robinson. (Ex. C2 – Ex. C4.) Still, Ripal Mashruwala and Patrick Robinson had to admit Plaintiff did a good job and she trained other employees. On October 16, 2017, Patrick Robinson and Aida Sanchez cooked up the first Pre-Disciplinary Notice ("NOTICE") and they failed to list any fact or event in support their fabrication within the time period of July 2017 to October 16, 2017. Basic information about Patrick Robinson and Aida Sanchez has been presented in Plaintiff's Statement of Fact. (Ex. A, Pl Aff. ¶¶2-3; ¶21; Stmt. ¶4.) Later they relied heavily and solely on the story that there were "two queries" to do the same job in the system. (Ex. B1, #10)They failed to specify the names, paths, etc. for the two queries. And they contended their victim, the Plaintiff, did not offer any assistance by providing any information about that. *(Id.)* Then, Mr. Michael Fitzgerald verified such a response on oath. *(Id.)* That is ridiculous.

The month end query set was designed in 2012. After two years in use, Plaintiff was directed to train Robinson and others to use the software. (Ex. A, Pl Aff. ¶12.) For certain, reviewing financial report monthly every year, Mr. Michael Fitzgerald knew the falsity of all arguments from Robinson and Aida Sanchez from the start, but Fitzgerald chose to connive at their unlawful activities. (Ex. A, Pl Aff.¶11.) Even worse, after the lawsuit was filed, he would provide flagrant false statement on oath and falsify public employment record. (Ex. B1, Ex. A, Pl Aff. ¶11.)

On May 3, 2018, Plaintiff filed a complaint with EEOC. (Ex. B3, Stmt. ¶2.)

On May 14, 2018, they created the second NOTICE; they list no fact or event within the time period between May 3 and May 14, 2018. As such the second NOTICE is retaliation for Plaintiff's EEOC filing. On October 24, 2018, Plaintiff initiated the instant suit. And then on

March 19, 2019 and June 17, 2019, Patrick Robinson and Aida Sanchez manufactured another

two NOTICES. Those are brazen move for retaliation for filing a lawsuit in Federal Court. Here,

Plaintiff submits her response to 2017 job performance and four NOTICES. (Ex. C4 – Ex.C8.)

**Defendant Falsified Two Different Organization Charts for the Same Materials**

**Department.**

From July of 2019, one organization chart became accessible in the University network.

(Ex. C8 and Exhibit therein.) Coincidentally or not, in December of 2018 Defendant lead counsel

Heather D. Erickson wantonly argued the alleged sexual harasser was Plaintiff's "co-employee"

(Doc. 16). (Ex. B4.) As such, Defendant has no direct liability for his accused wrongdoings. The

authors of the chart, in the chart design, either got the idea from counsel Erickson, or had the

same illusion, but they failed to realize the disastrous consequences for what they were doing:

the unlawful nature of Defendant's retaliatory measures had been exposed in the open, as there

was no immediate supervisor acting as accuser against the Plaintiff.

Stepping up for a rescue, Mr. Michael Fitzgerald fabricated another chart of his own,

suggesting Patrick Robinson supervises only one employee, the Plaintiff. And Mr. Fitzgerald

verified on oath there were two different charts existed for the same Department. (Ex. B1, at #15,

Ex. B2, at #14.)

As the Honorable Court can see, Mr. Michael Fitzgerald's statement on oath is an

admission that falsifying public employment record and perjury were committed in this case.

### III.    legal standard for summary judgment

Summary judgment obviates the need for a trial only when there is no genuine issue of

material fact. Fed. R. Civ. P. 56I; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The

movant bears the burden of demonstrating that no genuine issue exists. *Cont'l Cas. Co. v.*

4

*Northwestern Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005).

"At summary judgment a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) at 255. The general rule is that summary judgment should be denied where, as here, the party opposing summary judgment comes forward with specific facts challenging movant's evidence. *Corrugated Paper Products, Inc., v. Longview Fibre Co.*, 868 F.2d 908, 914 (7th Cir. 1989); *Rand v. CF Industries. Inc.*, 42 F.3d 1138, 1146 (7th Cir. 1994).

In this case, Plaintiff has presented several genuine issues to preclude a summary judgment.

## IV.  This Court Should Deny Summary Judgment

### A.  Multiple Issues in Dispute Have Been Presented in Plaintiff's Motion Doc. 141, which preclude summary judgment

In the motion, Plaintiff raised several material issues, such as:

(i)     Whether Defendant is at default on all Counts;

(ii)    Whether Defendant's answer and affirmative defense met the pleading standard;

(iii)   Whether Defendant's authorized representative Mr. Michael Fitzgerald should be sanctioned for falsifying public employment record; what measure should be taken to stop or deter Mr. Fitzgerald from providing flagrant false statement on oath in multiple aspects;

(iv)     Whether Defendant's counsels violated Model Rule 3.1, 3.4 and 3.7 set forth by

American Bar Association which are recognized by Local Rule 83.50.

As the Honorable Court can see, these issues will preclude a summary judgment.

**B. Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiff's 42 U.S. C. §1983 Claim.**

**(i)  Under First Amendment of  U. S. Constitution**

In July of 2017, in response to job performance review, Plaintiff wrote: "It is a routine for

Robinson to seek all and every opportunity to enter my cubicle, approach me in front and behind

my back, with or without my notice, with or without any excuse; sometimes, I realize he is just

behind my back by hearing breath noise. I am in shock, and I tell him I am scared; sometimes,

when I am working, Robinson comes from nowhere I know of, surprise me by trying to grasp the

mouse I am using, and claiming he wants to show me something." Also Plaintiff wrote: "It is a

routine for Robinson to demand me to receive permission before hand whenever I leave my

cubicle, even when I go to washing room for several minutes…. But more outrageous thing is

that he would follow me, watching I enter and get out the washing room, he would follow me

again until I return to my desk." (Ex. C2, Ex. C4, Stmt ¶13.)

During work, Robinson would spend a whole day, demanding Plaintiff to find a file he

saved and raised a provocative question on whether Plaintiff erased the unnamed or no existed

file; (Ex. D3.) also Robinson and all his collaborators dared to change an existing query to run a

financial report. (Ex. D4.)

Robinson would become enraged whenever Plaintiff told him not to enter her cubical

and approach her in close range without any excuse. He would begin yelling and shouting; on

many occasions, Robinson would demand meeting with Plaintiff alone by spitting a word of "my

office!" or "conference room!" When Plaintiff asked him what the issue was for, he would become furious also. (Ex. D5, Ex. A, Pl Aff. ¶15.)

As the Honorable Court can see, Plaintiff is exercising her First Amendment rights to reject and report sexual harassment in work environment. See *Woerner v. Brzeczek*, 519 F. Supp. 517 (N.D. Ill. 1981) and *Frazier v. Delco Elecs. Co.*, 263 F.3d 663 (7th Cir. 2001).

### (ii) Under Fourteenth Amendment of U. S. Constitution

Defendant concealed how Ms. Silvina Ornelas was mistreated by Patrick Robinson; why and how she quitted from Defendant. (Ex. A, Pl. Aff. At ¶19; Resp. 16.)

In July 2017, when Plaintiff reported Robinson's wrongdoings to Michael Fitzgerald, he responded that Plaintiff felt she was sexually harassed by the Department. See Defendant Statement of Fact #22 in Doc. 145. Mr. Fitzgerald's office is several steps away from Plaintiff's cubicle, whenever his office door was open, he would hear and see everything, but he did nothing to stop Patrick Robinson from harassing and bulling Plaintiff. (Ex. A, Pl Aff. ¶13.) On multiple occasions Robinson demanded meetings with Plaintiff alone for no excuse. (Ex. D5.) Plaintiff sent emails to Fitzgerald, then, Fitzgerald would say: "He is your supervisor." Whenever Fitzgerald showed up with Plaintiff's persistent request, Robinson would declare the meeting was over and Fitzgerald would say nothing. (Ex. A, Pl Aff. 16.) In fact, both Robinson and Fitzgerald had no issue to discuss in the first place. Even when Robinson address the Plaintiff with the racial slur, cc to Michael Fitzgerald, he would keep silence and tolerant to insult a female employee. (Ex. D6, Resp.56.)

7

On August 5, 2019 Robinson sent an email cc to Aida Sanchez, pretending to be someone in a higher position than Sr. manager David Girard. Patrick Robinson demanded a temporary employee Theresa Daniels to work with him and after two or three months, Robinson let her go. Even at this time Defendant still refuses to disclose contact information for several female temporary employees once under Robinson's supervision. (Ex. D7, Ex. B5.)

On January 7, 2019, Plaintiff applied for a leave by using her benefit time for Chinese spring festival, in an email to Mashruwala and Robinson, cc to Fitzgerald, an electronic application form had been attached therein. Then Robinson demanded an original form which meant Plaintiff had to go to his office meeting him alone and handover the paper form in person. And later Fitzgerald agreed that Robinson's demand was improper. Indeed, Robinson's requirement is to harass and bully Plaintiff in the first place. (Ex. D6.)

In May 16, 2019 and October 10, 2019, Plaintiff wrote two emails to Robinson, cc them to Michael Fitzgerald, demanded him not to follow Plaintiff around, and not to approach her from front or behind her back in close range, not to make loud strange noise and name calling. Otherwise, Plaintiff would call University security or 911. (Ex. D8, Ex. D9.)

During pandemic, after Plaintiff just returned to work from sick leave and she had underlying health condition, with Fitzgerald knowledge, in May of 2020 and afterwards, Patrick Robinson repeatedly demanded Plaintiff to perform in-person training his female superior Kendra Pitts and others. By doing that Plaintiff's health and safety was put at risk. Also Robinson was harassing and bullying Plaintiff, at the same time, he was humiliating a female senior manager. (Ex. A, Pl Aff. ¶¶ 5-8.)

According to *Bohen v. City of East Chicago, Indiana,* 799 F. 2d 1180 (7th Cir. 1986), whenever a supervisor was involved in sexual harassment, whenever the employer failed to

protect female employees from sexual harassment, whenever intentional discrimination is committed, the Fourteenth Amendment of U. S. Constitution has been violated.

Furthermore, Plaintiff's *prima facie* case on 42 U. S. C. §1983 has been established. (Ex. A, Pl Aff. ¶23.) Even if Defendant is allowed to argue on this issue, even if Defendant disputes these facts, but that merely creates a genuine issue of material fact precluding summary judgment on her 42 U. S. C. §1983 claim.

## C. Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiff's EPA Claim.

Before 2013, Plaintiff's salary was substantially lower than Chad Turner. (Ex. C1, ¶1.) After Chat Turner quitted in 2013, Defendant did not and failed to find a male substitute, Plaintiff had to take over all his job responsibilities; and Plaintiff remained at same low level of pay. (*Id.*)

In 2015, Ripal Mashruwala ("Mashruwala") was promoted to be Plaintiff's supervisor and his salary was raised to the level of Plaintiff's. In 2016, Ripal Mashruwala was promoted again and his salary was doubled. (Ex. A, Pl Aff. ¶17.) As to Ripal Mashruwala, his cascade-rocket promotion is remarkable. Before each of his two boosts, there was no advertisement, announcement, or posting inside the department or beyond; there was no review panel, no formal merit evaluation. The reality is Mr. Mashruwala cannot do any job within the scope of IT group at that time and present. (*Id.*)

In 2014, Ripal Mashruwala was a trainee under the instruction from Plaintiff to run a simplest piece of software. (Ex. A, Pl Aff. ¶12, Ex. D10.) On October 16, 2017, Robinson and Aida Sanchez cooked up a NOTICE against Plaintiff. It asserted "no one can produce it on

Zhan's absent"; also it argued Mashruwala and Robinson had run the query set in March and April of 2017. That is self-conflicting and ridiculous. In his declaration, co-author with two Defendant counsels Mr. Mashruwala contended the same. As such, his dishonesty and ignorance remains the same after three years. (*Id.*)

For years there is an issue in dispute whether Mashruwala has any academic credential and work experience in the U. S. before he was hired by Defendant. (Ex. A, Pl Aff. ¶17.) On March 9, 2017 while Sr. manager Kendra Pitts was waiting for a result from Ripal Mashruwala, Michael Fitzgerald criticized Ripal did not know what a job assignment was and demanded Plaintiff to do the job for him. (Ex. D11.) It is interesting to note it was Robinson to raise the issue again and Mashruwala initialed the NOTICE to concur such assessment.

In fact, even at this time Mr. Mashruwala did not and cannot run the month-end query set to generate a financial report by himself. That should be the basic skills for an AP employee. (Ex. A, Pl Aff. ¶ 12.)

Mr. Ripal Mashruwala has no academic credentials or training certificate in the U. S. or abroad on interface software design and its applications. As a comparison, Plaintiff had a Master degree in Information Systems Management before she was hired by the Defendant. (Ex. A, Pl Aff. ¶17, Stmt. ¶6.)

According to *Ezell v. Potter*, 400 F.3d 1041, 1050 (7th Cir. 2005), employee can be considered similarly situated to his supervisor; and *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 743 (7th Cir. 1999), provided "'Actual job performance and content, not job titles, are key.'" *Quoting Soto v. Adams Elevator Equipment*, 941 F.2d 543, 548 (7th Cir.1991)

Plaintiff's *prima facie* case on Federal Equal Pay Act has been established. (Ex. A, Aff. ¶22.) Even if Defendant is allowed to argue on this issue, even if Defendant disputes these facts,

but that merely creates a genuine issue of material fact precluding summary judgment on her EPA claim.

## D. Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiff's ADEA Claim.

Chad Turner, Janet Johnson, and Ripal Mashruwala are at least ten years younger than Plaintiff. After Chat Turner quitted in 2013, Defendant did not and failed to find a younger substitute, Plaintiff had to take over his job duties; after Janet Johnson resigned in 2015, Defendant did not and failed to find a younger replacement, Plaintiff had to absolve her major job responsibilities. After that Plaintiff's job load became extremely heavy. For example, on June 29, 2018, Plaintiff had to work in the office from 7:30am to 8:30pm. (Ex. D12.) At that time, Plaintiff received a salary which was substantially lower than that Chad Turner, or Janet Johnson or Ripal Mashruwala did.

As stark comparison, for years Defendant tries to force Plaintiff out of employment from the University one way or the other, imposing super heavy workload with same level of low pay, it is just a first small step; then followed senseless and baseless accusations against Plaintiff; (Ex. C1 – Ex.C8.) during pandemic, Defendant would ignore written email directive from Chancellor's office, and on several occasions it would deduct Plaintiff's paycheck when she requested sick leave by using her benefit time. (Ex. D13.)

Here, Plaintiff may defeat summary judgment on an age discrimination claim by showing that: (1) Plaintiff 's age is over 40.  She belongs to a protected class; (2) she performed her job according to her employer's legitimate expectations; (3) she suffered adverse employment actions; (4) other employees outside the protected class were treated more favorably. *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 886 (7th Cir. 2001) (reversing order granting summary judgment on ADEA claim).

Plaintiff's *prima facie* case on ADEA claim has been established in this case. (Ex. A, Pl Aff. ¶22.) Even if Defendant is allowed to argue on this issue, even if Defendant can present some arguments on this issue, genuine issues of material fact bar summary judgment as to Plaintiff's age discrimination claim.

**E. Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiff's Title VII Claim.**

Chad Turner is white. He was paid much higher than his co-worker, the Plaintiff in 2013. (Ex. C1 at ¶1.)

Even at this time Defendant still conceal Patrick Robinson's academic record and his national origin. As strange as Ripal Mashruwala's promotions, there was no advertisement, announcement, or posting inside the Department or beyond for Robinson's elevation; there was no review panel, no formal merit evaluation. (Ex. A Pl Aff. ¶18, Stmt. ¶12.) In August of 2016 Robinson came to Plaintiff's cubicle, he claimed to be Plaintiff's immediate supervisor; (*Id.*) at the same time, he demanded Plaintiff to show him all databases and queries at IT group for the Department. (*Id.*) Further he demanded Plaintiff to teach him how to run a quarterly query to generate financial document. (*Id.*) From that time, Robinson became a supervisor being trained on the job by his subordinate, the Plaintiff. (*Id.*) The reality is after three years training and demonstrations, Robinson cannot get the rough idea how to run the quarterly query set. (Ex. D14.) As to month end query set, it took Robinson five years to run it and generate the first financial report by himself. And he uses the same program ever since. (Ex. D15.)

Record shows, Patrick Robinson and Aida Sanchez cooked up several bizarre accusations against Plaintiff for retaliation. And in September or October of 2019, a false report was submitted to CMS, Illinois Department of Central Management Services, and changed Plaintiff's

employment status as leave of absence in October 2019, although she worked at Defendant every day. And Plaintiff's health insurance premium was raised to over $1600 for that month. (Ex. D 16.) According to Michael Fitzgerald, Aida Sanchez had to be contacted to solve the problem. (*Id.*)

Test of Title VII Statute makes it very clear whenever racial discrimination occurred, the specific law was violated; after Plaintiff has established a *prima facie* case, Defendant has the burden to offer non-discriminatory reason for defense. See *McDonnell Douglas Corp. v. Green*, 411 U. S. 792 (1973), and *Rozskowiak v. Village of Arlington Heights*, 415 F.3d 608, 614 (7th Cir. 2005). But Defendant failed; as ADEA, the Title VII has anti-retaliation provision. As long as such unlawful measures are taken as Robinson and Aida Sanchez did, Title VII is violated.

Plaintiff's *prima facie* case on Title VII claim has been established in this case. (Ex. A, Pl Aff. ¶22.) Even if Defendant is allowed to argue on this issue, even if Defendant might present some argument in fact that would not be enough to overcome Plaintiff's specific evidence and to obtain summary judgment.

### V.    Conclusion

The current arguments and recent submissions from Defendant did not and cannot change the fact that on or before December 4, 2020 it failed to disclose what its defense(s) and affirmative defense(s) were. Defendant should not be allowed to turn a motion for summary judgment into a motion to dismiss for relitigation by raising issues it had not presented; by recycling argument which was already rejected and by creating materials for those purposes which were not on the record in this Court.

For the foregoing reasons, this Court should deny Defendant's motion for summary judgment and grant such other and further relief as justice may require.

Respectfully submitted,

_____
(Plaintiffs Signature)

_____
(Date)

Yu L. Zhan   Pro Se
2913 S. Union Ave., Chicago, IL 60616
Tel: (312) 225-4401
yuzhan0712@gmail.com

14