## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Yu L. Zhan, | |
| Plaintiff, | |
| v. | Case No. 18-cv-7115 |
| | Judge Mary M. Rowland |
| Board of Trustees of the University of Illinois, | |
| Defendant. | |

## MEMORANDUM OPINION & ORDER

Plaintiff Yu Zhan's Amended Complaint (Dkt. 31) accuses the Board of Trustees of the University of Illinois, of violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, the Age Discrimination in Employment Act ("ADEA"), and the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d). Plaintiff also accuses Defendant of violating her First and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983.[1] The parties have filed cross motion for summary judgment. For the reasons stated herein, Plaintiff's motion for summary judgment, (Dkt. 141), is denied and Defendant's motion, (Dkt. 143), is granted.[2]

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[1] In her Amended Complaint the Plaintiff briefly raises additional state law claims including slander, libel, and defamation. (Dkt. 31 at 9). These claims were previously dismissed. (Dkt. 28).

[2] Plaintiff presents her arguments as six separate motions for summary judgment, but the Court understands her to be presenting six arguments in support of a single motion for summary judgment.

law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted).

"The ordinary standards for summary judgment remain unchanged on cross-motions for summary judgment: [courts] construe all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017) (citations omitted). To do so, the Court addresses the motions separately. *See Marcatante v. City of Chi.*, 657 F.3d 433, 439 (7th Cir. 2011); *see also Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 416 (7th Cir. 2019) ("Each cross movant for summary judgment bears a respective burden to show no issue of material fact with respect to the claim.").

## BACKGROUND

### A. Local Rule 56.1

"Local Rule 56.1 statements serve to streamline the resolution of summary judgment motions by having the parties identify undisputed material facts and cite the supporting evidence." *Laborers' Pension Fund v. Innovation Landscape, Inc.*, No. 15 CV 9580, 2019 WL 6699190, at *1 (N.D. Ill. Dec. 9, 2019) (citation omitted). The

rule requires that the moving party file "a statement of material facts that complies with LR 56.1(d) and that attaches the cited evidentiary material." Local Rule 56.1(a)(2). The movant's "[f]ailure to comply with LR 56.1(a)(1) or (a)(2) may be grounds for denial of the motion." Local Rule 56.1(a)(3). The party opposing a motion for summary judgment must file a response to the movant's statements of fact and may file a "statement of additional material facts that complies with LR 56.1(d) and that attaches any cited evidentiary material." Local Rule 56.1(b). The moving party may then file a response to the statement of additional facts in the same manner. Local Rule 56.1(c). The Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 414 (7th Cir. 2019) (internal citation and quotations omitted). This is the case even when one party is *pro se*. *See, e.g., Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010).

Zhan failed to provide a statement of undisputed material facts citing the evidentiary record in support of her motion for summary judgment. Her motion for summary judgment contains both factual and legal statements but does not reliably cite supporting evidence in the record. (Dkt. 141). At its discretion and because Zhan is *pro se*, the Court will not require her strict compliance with Local Rule 56.1.[3] When ruling on Plaintiff's motion for summary judgment the Court will, when appropriate, rely on her responses to Defendant's statement of facts and her additional statements.

---

[3] Defendant provided Rule 56.1 statements in support of its motion for summary judgment and Zhan responded and provided additional statements of undisputed fact. (Dkt. 145 & 148).

3

## B. Facts

Plaintiff Zhan was hired by the University of Illinois in 2008 as a Database Management Specialist in the Hospital and Health Sciences System's Materials Management Department. (Dkt. 145, ¶ 8). The Director of that department was, at all relevant times, Michael Fitzgerald. (*Id.*, ¶ 11). At some point Zhan became an IT Technical Associate, and until 2015 she reported to an IT Manager, Janet Johnson. (*Id.*, ¶ 9). In 2015 Zhan began reporting to Ripal Mashruwala, who was at that time the Materials Management Department's Financial Analyst. (*Id.*, ¶ 10). In 2016 Mashruwala was promoted to Business Associate Administrator and another employee, Patrick Robinson,[4] became the Department's Financial Analyst and Zhan's direct supervisor. (*Id.*, ¶ 11). Patrick Robinson supervised seven employees, of whom Zhan was both the oldest and the highest paid.[5] (*Id.*, ¶ 12).

Zhan was not paid as much as a colleague named Chad Turner, who worked in a different branch of the Defendant's hospital, the Information Systems Department. He was a white man, younger than Zhan, and at the time he left the University he was being paid more than Zhan. She contends that when Turner quit, she was given all of his responsibilities. But according to Director Fitzgerald's declaration, an

---

[4] Patrick Robinson is a 65-year-old man of mixed race, Ripal Mashruwala is a man of Indian descent who is over 40 years old. (*Id.*, ¶ 10).

[5] Over the years Robinson's subordinates have included the following employees: Yu Zhan (current IT Technical Associate, 69-year-old Asian woman, salary $66,592.50); Darrion Roebuck (current Account Tech III, 44-year-old African American man, salary $48,808.50); Renee Cruz (former Account Tech II, 48-year-old Mexican woman, salary $38,122.50); Silvina Ornelas (former Account Tech II, 30-year-old Hispanic woman, salary $45,376.50); Shawn Deng (former employee, 36-year-old Asian man, salary $48,281.50); Hetal Shah (Account Tech II, 36-year-old South Asian woman, salary $39,682.50); Cindy Manzanarez (Account Tech II, 30-year-old Hispanic woman, salary $33,559.50).

employee named Leonard Smith took over Turner's responsibilities. Moreover, Turner had other IT responsibilities (such as manning the help desk and building or administering systems that Zhan merely accessed) beyond the purview of the Materials Management Department that were delegated to other employees. (Dkt. 145, ¶¶ 47–52).

According to the Defendant, in 2016 Zhan would at times leave the office during the workday to do personal errands, miss deadlines, and refuse to discuss assignments with Robinson. As a result, Robinson asked her to tell him when she was leaving her desk for more than 20 or 30 minutes. (Dkt. 145, ¶ 14). According to Zhan, during this time Robinson "followed Plaintiff around all the time, even when Plaintiff was in the restroom for less than ten minutes." (Dkt. 148, ¶ 14).

In March of 2017, Robinson noticed that a database query Zhan frequently used was not working. According to the Robinson he asked Zhan to fix the query, but she refused. (*Id*., ¶ 17). According to Zhan, Robinson did not know how to run database queries and was mistaken that this one was not working. (Dkt. 148, ¶ 17).

In April of 2017, Defendant claims that Zhan submitted a month-end report to Mashruwala that contained inaccuracies totaling over $200,000. When Robinson and Mashruwala each ran the query that generated this report, it did not contain any inaccuracies. When asked to explain how she had generated her version of the report, Zhan refused to answer her supervisors' questions. Base on this refusal, Robinson reached out to a Human Resources (HR) representative, Aida Sanchez, and initiated

disciplinary proceedings. (Dkt. 145, ¶ 18). Zhan, for her part, denies that her month-end report contained any inaccuracies. (Dkt. 148, ¶ 18).

In July of 2017, Robinson provided Zhan with a performance review, approved by Mashruwala, stating that she was "meet[ing] some expectations." (Dkt. 145 at ¶ 20). Zhan responded in an email to Mashruwala and Department Director Fitzgerald saying that she should have received the rating of "exceeds expectations," because she had been forced to take on the responsibilities of employees who had quit, had worked after hours and on the weekends, and had been promised a pay raise. (Dkt. 149 at 29). She wrote that Robinson was reporting "phony" behavioral issues such as impolite phone calls, unexplained absences, deleted files. *Id*. Zhan also wrote that Robinson was following her to the bathroom. *Id*. Finally, Zhan wrote that her former manager had issued her a prior warning on the date of the Chinese Spring Festival, and then held the hearing about that warning on the date of the Chinese Lantern Festival, and that she was only being faulted for her "verbal and written communication skills" because she was Chinese. *Id*. Director Fitzgerald responded to Zhan's email by encouraging her to reach out to the Office of Access and Equity to report her manager's behavior if she felt she was being harassed. *Id*.

When she spoke with a representative of the Office of Equity and Access, Zhan reiterated her accusation that Robinson was following her to the bathroom, and also accused him of entering her cubicle without permission and grabbing her hand as she held her computer mouse. (Dkt. 145, ¶ 22).

On October 16, 2017, HR completed its review of Robinson's April request for discipline proceedings against Zhan. (Dkt. 145, ¶ 25). In November of 2017, a pre-disciplinary hearing was held to discuss Zhan's insubordination during the month of April. *Id*. She ultimately received a letter of warning. *Id*. Zhan maintains that the meeting was retaliation for "exposing and condemning sexual harassment committed by Patrick Robinson." (Dkt. 148 at ¶ 26).

In December of 2017, Zhan submitted a year-end report to Mashruwala that contained some inaccuracies. (Dkt. 145 at ¶ 27). Zhan generated a second, accurate report. *Id*. Zhan contends that neither Mashruwala nor Robinson were able to run such queries themselves, and that they had an inaccurate sense of how long it should take for her to run such queries. (Dkt. 148 at ¶ 27). She does not deny that her report contained inaccuracies, however, and says she submitted the corrected report later that day. *Id*.

In February of 2018, Zhan submitted a month-end report that contained a $1.8 million inaccuracy to Mashruwala on the day that he needed to submit it to the University's Office of Business and Financial Services. (Dkt. 145, ¶ 28). The next day Robinson ran the report himself and noticed the inaccuracy. *Id*. When he spoke to Zhan about what happened, she sent him a corrected report but did not provide an explanation. *Id*. Zhan accuses him of "bullying, yelling, shouting, and interrupting." (Dkt. 148, ¶ 28). She tacitly acknowledges that there were errors in her original report (saying the next day she submitted "the correct result," *Id*.) but maintains that if

7

Robinson had faulted her work, he would have issued her another disciplinary warning. *Id.*

In March of 2018, Zhan submitted a month-end report that had an unusual header indicating it had not been prepared using the queries on the shared network. (Dkt. 145, ¶ 29). When questioned by Robinson, Zhan refused to explain how she had run the report. Zhan does not deny the existence of the header irregularities but responds that it was Robinson's duty "to submit a reason on what happened". (Dkt. 148, ¶ 29).

On May 14, 2018, Zhan received notice of a second pre-disciplinary hearing to be held on May 30 to address the inaccuracies in Zhan's reports between November and March, as well as her unwillingness to follow directions from managers. (Dkt. 145, ¶ 30). She was suspended for five days. *Id.* Zhan contends that the Defendant held this hearing to retaliate against her for filing EEOC charges on May 2, 2018.[6] (Dkt. 148, ¶ 30, citing Dkt. 149 at 24).

In July of 2018, Zahn refused to take calls from Robinson at her desk to discuss assignments and instead told him to send her an email. (Dkt. 145, ¶ 35). On March 5, 2019, Robinson again asked to meet with Zhan to discuss her assignments. Zhan refused to meet and told Robinson to instead send her an email. (*Id.*, ¶ 36). When he insisted on meeting in person, she requested that his supervisor be present. On March 27, 2019, a third disciplinary hearing was held to address Zhan's unwillingness to

---

[6] The parties disagree about when Zhan filed her EEOC charges. Zhan provides a letter to the EEOC dated May 2, 2018, and a certified mail receipt dated May 3rd. (Dkt. 149 at 24–25). Defendant relies on the fact that the charge is marked "received" on August 15, 2018. It is possible that Zhan first provided the EEOC with a copy of her allegations in the form of a letter before filling out a charge form. *See, e.g., Daum v. Staffing Network, L.L.C.*, No. 01 C 9643, 2002 WL 31572557, at *2 (N.D. Ill. Nov. 19, 2002) (letter to the EEOC satisfies the basic requirements of a charge).

discuss her assignments. (*Id.*, ¶ 37). She received a ten-day suspension. (*Id.*, ¶ 38). Zhan asserts this disciplinary hearing was retaliation in response to this lawsuit filed on October 24, 2018. (Dkt. 148, ¶ 38).

On May 16, 2019, Zhan sent Robinson an email accusing him of altering her "paycheck, vacation time, and sick time," following her to the bathroom, and sneaking up on her to surprise her. (Dkt. 145, ¶ 39). This email included some strong language—Zhan told Robinson to "see a doctor or get lost or get a life," learn manners from "Civil Class 101," take "English language class 101," and "get rid of [the] dirty language or racial slur[s]" in his vocabulary. (Dkt. 149 at 112). On June 17, 2019, Zhan was notified that a pre-disciplinary hearing would take place on July 23, 2019 to discuss the contents and tone of this email. (Dkt. 145, ¶ 40). She received a thirty-day suspension. *Id.* Zhan maintains that her email was warranted because Robinson had altered her paycheck and was following her around. (Dkt. 145, ¶ 39).

On January 8, 2019, Robinson sent Zhan an email, copying his supervisor Mashruwala and Director Fitzgerald. In that email, he asked Zhan to submit a hard copy of a vacation request] but greeted her "Ho Yu Zhan" rather than "Hi Yu Zhan." (Dkt. 149 at 110). Zhan asserts that this was meant as a racial slur.

On May 28, 2020, Robinson asked Zhan to teach two new employees, Kendra Pitts and Sherelyn Salandanan, how to use a software program. (Dkt. 145, ¶ 43). According to the Defendant, Zhan refused and told Robinson to contact the software vendor for training. *Id.* Zhan apparently refused similar requests on June 5th and July 21st. *Id.* Minutes after Robinson made this request for a third time, Zhan requested two days

of sick leave. *Id*. When she returned on July 23rd, Robinson asked her again to train the new employees and she instead took sick leave for the remainder of the day. Zahn denies that any of these events took place. (Dkt. 148, ¶ 43).

## ANALYSIS

### I. Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment solely on the grounds that the Defendant made a variety of procedural errors during the course litigation. None of these present a basis to grant summary judgment.

### A. Timeliness of Response to Original and Amended Complaint

Plaintiff asserts Defendant failed to file a responsive pleading within 21 days of service of the Complaint, thereby admitting the allegations therein. (Dkt. 141 at 3). Plaintiff's Complaint was filed on October 24, 2018, (Dkt. 1), and Defendant was served a copy on October 29, 2018, (Dkt. 6), giving Defendant until November 19th to respond. Fed. R. Civ. P. 12(a)(1)(A)(i). On November 16, 2018, the Defendant requested an extension of 30 days to respond to the Complaint pursuant to Fed. R. Civ. P. 6(b). (Dkt. 9). On November 29, 2018 the Court gave Defendant an additional 30 days, until December 31, to file a responsive pleading.[7] (Dkt. 14). Defendant filed a motion to dismiss on December 28, 2018, making it timely. (Dkt. 15). Plaintiff moved to strike the motion to dismiss as untimely filed, (Dkt. 19 & 25). The Court denied Plaintiff's motion to strike without elaborating. (Dkt. 28). The Court will not upset this ruling—the original motion to dismiss was timely filed.

---

[7] December 29, 2018 was a Saturday so filings made the following Monday, December 31, 2018 would be considered timely. *See* Fed. R. Civ. P. 6(a)(1)(C).

Plaintiff filed an Amended Complaint on May 30, 2019. (Dkt. 31). According to Rule 15, Defendant's response was due on June 13, 2019. On that day, Defendant moved for a 21-day extension of time.[8] (Dkt. 32). The Court granted Defendant's motion on June 21, 2019, allowing Defendant until July 10, 2019. (Dkt. 36). Defendant filed its Answer on July 7, 2019. (Dkt. 37). Plaintiff moved to strike that answer as untimely, (Dkt. 38), and the Court denied that motion without elaboration. (Dkt. 40).

Plaintiff argues that Defendant's motion for an extension of time was "improper" because it was filed on the date the answer was due, and the Court erred in extending the new due date from the date of its order (June 21st) rather than the date of Defendant's motion (June 13th). (Dkt. 141 at 2). Both arguments are without merit. Rule 15 states that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time [. . .] *if a request is made,* before the original time or its extension expires." Defendant properly requested an extension on the date the response was due.

Plaintiff's second argument also fails. The Court's June 21st order granted a 21-day extension, it did not specify whether the extension would follow the original due-date of June 13th (until July 5th) or following the Court's order (until July 12th). Plaintiff moved to strike Defendant's answer as untimely. (Dkt. 38). The Court denied

---

[8] In that motion the Defendant misstates the date its answer is due, believing it to be 21 days rather than 14 days after the Amended Complaint was filed. Defendants have 21 days to respond to initial pleadings, but only 15 days to respond to amended pleadings. *Compare* Fed. R. Civ. P. 12(a)(1)(A)(i) *with* Fed. R. Civ. P. 15(a)(3). Plaintiff argues that this inaccuracy is also grounds for granting her summary judgment. Defendant's error has no bearing on whether any issues of material fact remain and whether she is entitled to judgment as a matter of law.

that motion. (Dkt. 40). Plaintiff was not prejudiced by the short delay, and the Court will again leave its previous order denying her motion to strike undisturbed.

## B. Failure to Cite Statutes

Plaintiff next argues that Defendant has waived any arguments about her Equal Pay Act claim by failing to cite that statute when requesting an extension of time to file a responsive pleading, (Dkt. 141 at 4, referring to Dkt. 32), and that Defendant has waived arguments about her § 1983, ADEA, and Title VII claims by failing to refer to them by name in a motion to compel her deposition. (Dkt. 141 at 5, citing Dkt. 106). These arguments are meritless. Motions for an extension of time and to compel a deposition are not vehicles for making arguments about the merits of statutory claims, so the absence of such arguments in those motions is neither surprising nor troubling to the Court. More importantly these arguments provide no basis to grant summary judgment.

## C. Interrogatories

Plaintiff's motion for summary judgment next takes issue with Defendant's responses to various interrogatories. (Dkt. 141 at 9–23). Discovery was actively supervised by the magistrate judge between September 11, 2019 and November 16, 2020. Both parties had a full and fair opportunity to develop the factual record. Plaintiff now raises or renews various arguments about Defendant's responses to her interrogatories. For instance, she objects to Defendant's refusal to provide a list of its affirmative defenses in response to an interrogatory. (Dkt. 141 at 9). At the time this interrogatory was served it had already provided Plaintiff with a list of affirmative

defenses upon which it might rely, as required by Fed. R. Civ. P. 12(b); Fed. R. Civ. P. 8. (Dkt. 37 at 54).[9] Zhan also complains that "all three hundred denials in Defendant's answer are not properly asserted" because they do not cite specific parts of the factual record. (Dkt. 141 at 15). This is more than the Rules of Civil Procedure require at the pleading stage. Fed. R. Civ. P. 8. Moreover, at summary judgment, this Court considers only the facts included in the parties' Local Rule 56.1 statements and evidence from the record that supports or refutes them.

## D. Veracity of Organization Chart

Plaintiff next argues that in 2018 the Defendant created an organization chart "for litigation purposes" that did not list any subordinates under Patrick Robinson, despite the fact that he supervised Plaintiff and other employees. (Dkt. 141 at 27). She asserts that this was meant to shield Defendant from liability for Robinson's sexual harassment. But Defendant does not attempt to disclaim liability for Robinson's conduct by claiming he was Zhan's colleague rather than her supervisor.

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Plaintiff's motion does not provide *any* legal arguments demonstrating why

---

[9] Plaintiff raises various other problems with the Defendant's affirmative defenses, saying that some are not affirmative defenses, that Defendant failed to turn over documents supporting those affirmative defenses, that Defendant turned over *too many* documents and that the documents were "fabricated, [. . .] incomplete and misleading materials, voluminous irrelevant presentations and duplicates." (Dkt. 141 at 9). Discovery has closed. To the extent that Plaintiff believes Defendant's Rule 56.1 statements of undisputed material fact are supported by flawed evidence she must raise those concerns with specificity in her responses to those statements. She has not done so.

she is entitled to summary judgment. Plaintiff also fails to *point to any undisputed facts* supporting her legal claims. Plaintiff's motion for summary judgment is denied.

## II. Defendant's Motion for Summary Judgment

## A. Title VII

Title VII prohibits discrimination by employers on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Plaintiff Zhan claims that the Defendant violated Title VII by discriminating against her, retaliating against her for asserting her rights under Title VII, and creating a hostile work environment. The Court addresses each of these claims in turn.

### 1. Discrimination

At summary judgment, the critical question for the Court faced with a discrimination claim to decide is "whether the plaintiff has produced enough evidence to permit a reasonable factfinder to conclude that the plaintiff's race or other proscribed factor caused the adverse employment action." *See Purtue v. Wis. Dep't of Corr.*, 963 F.3d 598, 602 (7th Cir. 2020) (citations omitted). Courts must view the evidence as a whole when making this determination. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 766 (7th Cir. 2016). One way "that a plaintiff can assist the court in sifting through the evidence to assess whether discrimination under Title VII" occurred is by using "the familiar burden-shifting framework of *McDonnell Douglas*." *Chatman v. Bd. of Educ. of City of Chicago*, No. 20 CV 2882, 2021 WL 3046819, at *4 (7th Cir. July 20, 2021). Plaintiff cites *McDonnell Douglas* but does describe how the facts of this case satisfy its elements, (Dkt. 147 at 13), so the Court will evaluate the

14

record both with and without the aid of this framework. *See, e.g., Knapp v. Evgeros, Inc.*, 205 F. Supp. 3d 946, 957 (N.D. Ill. 2016) *and Bergholz v. John Marshall L. Sch.*, 448 F. Supp. 3d 887, 894 (N.D. Ill. 2020) (doing likewise).

i. *McDonnell Douglas* Analysis

Under the *McDonnell Douglas* framework, a plaintiff must establish that: (1) she belonged to a protected class, (2) she was meeting her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) she was similarly situated to other employees outside of the protected class who were treated better. *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). If a plaintiff establishes these four factors, she has made out a prima facie case, and the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church*, 733 F.3d 722, 728 (7th Cir. 2013).

It is uncontested that Zhan is an Asian woman. Plaintiff's briefs, though not clear on this point, suggest that the adverse employment actions Zhan alleges is payment of a lower salary than other employees received.[10] Defendant does not challenge there was an adverse employment action and instead asserts that Zhan was not meeting

---

[10] The Title VII portion of Zhan's brief makes no reference to her suspensions, and the similarly situated employee she seeks to compare herself to, Chad Turner, has not been accused of making any query errors or insubordination. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir. 2000), overruled in part on other grounds by *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016) ("[I]n disciplinary cases [. . .] a plaintiff must show [. . .] that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.").

its legitimate expectations and was not similarly situated to the male and non-Asian employees who received better treatment.

With respect to her performance, Defendant relies on evidence in the record, principally the declarations of Robinson, Mashruwala, and Director Fitzgerald, indicating that Zhan made significant errors while performing her job duties during the months of March, April, and December of 2017, as well as February and March of 2018. (Dkt. 145, ¶¶ 14–32). Zhan denies making some of these errors, (Dkt. 148, ¶¶ 14–18), but tacitly admits making others. For example, she says "Plaintiff submitted the *correct* report" four hours after submitting the incorrect report, (Dkt. 148, ¶ 27, emphasis added), and "Plaintiff submitted the *correct* result on February 2, 2018," the day after submitting the incorrect report. (*Id*. at ¶ 28, emphasis added).

Defendant also presents evidence that Zhan was insubordinate to her supervisors between 2017 and 2020. (*Id*., ¶¶ 34–46). Zhan denies many of these allegations but again acknowledges some. For example, in response to the allegation that she refused to explain to Robinson how she was running her reports she responds: "it's the duty of [Robinson] or his collaborators to submit a reason on what happened." (Dkt. 148, ¶ 29). And in response to the allegation that Zhan refused to answer Robinson's phone calls to discuss assignments, she says "if Robinson really had some issues to discuss with Plaintiff, he should do it through email communication." (*Id*., ¶ 35).

Zhan received three suspensions and one warning letter during this time period. (Dkt. 145, ¶¶ 21, 26, 32, 38, 42). She also received a performance review saying that she was only "meeting some expectations." (Dkt. 147, ¶ 20). Zhan does not deny

receiving those suspensions and warnings, though she does deny that there was any basis for them. (Dkt. 148, ¶¶ 30, 32, 36, 42).

Zhan has provided no evidence, apart from her own blanket denials of the Defendant's factual allegations, tending to show that she was meeting her employer's expectations. In fact, the emails she cites demonstrate that she was, on occasion, uncooperative with her supervisors. (Dkt. 149, Ex. D). For example, in response to a question about the location of a file Zhan responded, "I DID NOT DELETE ANYTHING," and several emails from Robinson about a close deadline went unanswered for hours (*Id.* at 97–98). Therefore, she has failed to make out a prima facie case under *McDonnell Douglas*.

Zhan has also failed to show that she was similarly situated to other employees outside of her protected classes who received better treatment. She points to Chad Turner, a white male IT employee who quit in 2013.[11] Zhan claims that he was paid more than her while he was employed and that she assumed all of his responsibilities within the Materials Management Department when he left. (Dkt. 147 at 12). Defendant concedes that Turner's salary was higher than Zhan's, but argues that a different employee, Leonard Smith, took over Turner's responsibilities. (Dkt. 145 at ¶ 48). The Court need not wade into this disagreement, because according to the *uncontroverted* testimony of Director Fitzgerald, Turner had additional responsibilities outside of the Materials Management Department that Zhan did not assume. (Dkt. 145 at 50–52). These included serving as a database administrator for

---

[11] Zhan identifies additional employees as comparable for her ADEA and EPA claims. (Dkt. 147 at 9, 11).

a payment and inventory system that Zhan merely accessed, serving as the database administrator for a patient information system that was used throughout the Defendant's hospital, building user interfaces, and manning the IT help desk. Given these additional duties, and the fact that Zhan and Turner apparently had different supervisors and worked (for the most part) in different departments, no reasonable factfinder could determine that they were similarly situated. Zhan has therefore failed to satisfy two prongs of the *McDonnell Douglas* test, and cannot make out a prima facie case of discrimination using that framework.

### ii. *Ortiz* Analysis

Viewing all of the evidence in the light most favorable to Zhan, a reasonable factfinder could not conclude that she was discriminated against on the basis of her race, national origin or gender. The only "genuine issues of material fact [that she argues] preclude summary judgment on [her] Title VII claim" are (1) Robinson's academic record and national origin, which she accuses him of falsifying; (2) Robinson's and Mashruwala's promotions, which she says they did not deserve; (3) the veracity of some of the accusations made against her during disciplinary proceedings, which she says Robinson and an HR representative "cooked up;" and (4) an increase in her health insurance premiums which she attributes to Robinson because the same HR representative was involved in fixing the problem. (Dkt. 147 at 12). Most of these "disputed facts" are completely irrelevant to the question of

Defendant's liability under Title VII for discrimination based on national origin, race or gender.[12]

There are a handful of relevant facts in the record that Zhan alludes to in her Amended Complaint and in her deposition and affidavit but does not mention in her response to the Defendant's motion for summary judgment or Rule 56.1 responses. Because she is *pro se* the Court considers them now, assuming they are true, in response to Defendant's motion for summary judgment. Zahn has at times pointed to the fact that 1) on at least one occasion Robinson addressed her by saying "Ho Yu Zhan" rather than "Hi Yu Zhan" in an email in which his supervisor and the department Director were copied, and 2) when she was disciplined by a previous supervisor for an unrelated issue, she received notice of the pre-disciplinary hearing on one Chinese holiday and the hearing itself was held on another. The only facts in the record that could possibly support a gender discrimination claim are that (1) Robinson once touched Zhan's hand while grabbing her computer mouse, and (2) he followed her to the bathroom after warning her about her unexplained absences during the workday. Taken together and assumed true for purposes of this motion, these facts would not cause a reasonable factfinder to conclude that Zhan was the victim of gender or national origin discrimination.

### 2. Retaliation

---

[12] The only "disputed fact" listed in Zhan's response brief that *could* have bearing on the Court's analysis is whether the disciplinary proceedings against Zhan were "cooked up," or, pretextual. She is not alleging the disciplinary proceedings themselves were discriminatory. In her responses to Defendant's Local Rule 56.1 statements of undisputed material facts, however, Zhan conceded that she had made some of the errors Robinson alleged, and that she had refused to discuss mistakes and assignments with him. This dramatically undercuts the assertion that the disciplinary proceedings were pretextual.

To make out a "prima facie case of retaliation under Title VII, [is to] establish that: 1) she engaged in statutorily-protected expression; 2) she suffered an adverse action by her employer; and, 3) there is a causal link between the protected expression and the adverse action." *See, e.g., O'Donnell v. Caine Weiner Co., LLC*, 935 F.3d 549, 553 (7th Cir. 2019) (quotations and citations omitted). In her response brief, Zhan points to four adverse employment actions that she considers retaliatory.

The first is the October 16, 2017 notice of a November pre-disciplinary hearing, which eventually resulted in a warning letter. (Dkt. 147 at 3). She says that this notice was issued in response to the accusations of sexual harassment she made against Robinson in July of 2017, in an email about her negative performance review. No reasonable factfinder could come to this conclusion, for at least three reasons. First, it is uncontroverted that Robinson contacted Human Resources to initiate this disciplinary proceeding in April of 2017, long before she accused him of sexual harassment in July. (Dkts. 145 at ¶ 19; 148 at ¶ 19). Second, the only evidence of causation Zhan provides is the timing of the accusations (July) and the notice (October). The Seventh Circuit has said that "mere temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue." *Stone*, 281 F.3d at 644. Where, as here, several months elapse between the protected action and the alleged retaliation, causation cannot be readily inferred. And third, there is ample uncontroverted evidence in the record (including a negative performance review, various emails, and the testimony of Zhan's supervisors)

indicating that Zhan was disciplined in the fall of 2017 because of poor performance and insubordination, not as retaliation.

The second alleged instance of retaliation Zhan points to is the May 14, 2018 notice of a May 30th pre-disciplinary hearing, which resulted in a five-day suspension. Zhan received this notice shortly after she mailed a letter to the EEOC on May 3rd, but before she filed her official charges on August 15th. Zhan offers the Court no reason to think that Robinson, Defendant's Human Resources department, or any other representative of the Defendant was *aware* of her May 3rd letter or received notice of Zhan's intent to bring charges to the EEOC before those charges were filed in August. Moreover, Defendants have provided uncontroverted evidence that the May pre-disciplinary hearing was prompted by poor performance and insubordination from late 2017 through March of 2018. Taken together, these facts prevent a reasonable factfinder from inferring the causation element of a retaliation claim.

The third and fourth actions Zhan alleges are the March 19, 2019 and June 17, 2019 pre-disciplinary hearing notices, both of which led to hearings and suspensions, were allegedly retaliatory for the law suit she filed on October 24, 2018. (Dkt. 148 at 3–4). Zhan does not point to any evidence in the record that would support a finding of causation, however. The span of four months between the filing of the lawsuit and the issuance of disciplinary notices, coupled with the well-documented and largely uncontroverted evidence of insubordination, would not allow a reasonable fact finder

to determine that Zhan was the victim of retaliation on these occasions. *See Stone*, 281 F.3d at 644.

### 3. Hostile Work Environment

Although Zhan's Amended Complaint articulates a hostile work environment claim, (Dkt. 31 at 9), her response to the Defendant's motion for summary judgment does not mention her hostile work environment claims or respond to the Defendant's arguments. (Dkt. 147). This claim is waived.

Moreover, Zhan's allegations, taken as true for purposes of Defendant's motion for summary judgment, do not describe sexual harassment amounting to a hostile work environment. The Court gleans from Zhan's responses to the Defendant's Rule 56.1 statements of fact that, according to her version of events, Robinson followed her to and from the bathroom, entered her cubicle and approached her without her permission (sometimes startling her), and once put his hand on hers while she held her computer mouse. These actions were not serious, pervasive, or even of an obviously sexual nature. *See, e.g., Swyear v. Fare Food Corporation*, 911 F. 3d 874 (7th Cir. 2018) (sexual jokes, vulgar nicknames, uninvited touching of an employee's arm and lower back, and standing in close proximity to her were not severe or pervasive enough to constitute a hostile work environment); *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 464 (7th Cir. 2002) (two unwanted back rubs and a uniform inspection during which plaintiff was forced to raise her arms so a supervisor could view her breasts did not create a hostile work environment); *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 431 (7th Cir. 1995) (nine sexual comments over the course of

seven months did not create a hostile work environment because supervisor did not touch plaintiff, invite her to have sex with him, expose himself, or show her lewd images).

Summary judgment is granted to Defendant as to all of Plaintiff's Title VII claims.

## B. ADEA

The ADEA prohibits employers from engaging in discrimination based on age against individuals who are at least 40 years old.[13] 29 U.S.C. § 631(a). Much like a Title VII discrimination claim, at summary judgment the plaintiff may use the *McDonnell Douglas* burden-shifting framework or can simply allow the Court to consider the evidence as a whole. *See Chatman v. Bd. of Educ. of City of Chicago*, -- F.4th -- (7th Cir. 2021) (citing *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016)). Zhan has not satisfied the *McDonell Douglas* framework's requirement that she met her employer's legitimate expectations for the reasons laid out above. Nor does she provide any evidence tending to show that she was similarly situated to better paid younger employees. The employees she compares herself to (Chad Turner, Janet Johnson, and Ripal Mashruwala) had far more responsibility than Zhan. Turner was an IT administrator who was responsible for databases used in multiple departments, Johnson was an IT Manager and Zhan's former supervisor, and

---

[13] Defendant failed to raise the issue of sovereign immunity under the Eleventh Amendment with respect to Plaintiff's ADEA claims. In *Kimel v. Fla. Bd. of Regents*, the Supreme Court held that while Congress intended to abrogate state sovereign immunity when it passed the ADEA, it was not within the legislature's constitutional power to do so. 528 U.S. 62, 83 (2000). Therefore, plaintiffs employed by states may not sue their employers for money damages under this statute. *Id.* Plaintiff has not made out the elements of an ADEA claim, so the Court need not reach the questions of whether her suit for both damages and injunctive relief is barred by the Eleventh Amendment. *See Edelman v. Jordan*, 415 U.S. 651, 664 (1974) (citing *Ex parte Young*, 209 U.S. 123 (1908)).

Mashruwala is a Business Associate Administrator and the manager to whom Zhan's direct supervisor, Patrick Robinson, reports. She has not made out two of the four elements of the *McDonnell Douglas* framework.

Viewing the evidence as a whole, no reasonable factfinder could determine that Zhan was discriminated against on the basis of her age by her employer. Defendant's motion for summary judgment is granted.

## C. Equal Pay Act

The Equal Pay Act "prohibits employers from paying employees different wages based on gender." *Kellogg v. Ball State Univ.*, 984 F.3d 525, 530 (7th Cir. 2021) (citations and quotations omitted). At summary judgment "the plaintiff bears the initial burden of establishing a prima facie case that pay discrimination occurred," which the Defendant then must rebut with one of "four statutory defenses," one of which is that the pay discrepancy is "based on any factor other than sex." *Id*. "To establish a prima facie case of wage discrimination under the EPA, [a female plaintiff] must show, by a preponderance of the evidence, that: (1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." *Warren v. Solo Cup Co.*, 516 F.3d 627, 629 (7th Cir. 2008) (citing *Stopka v. Alliance of Am. Insurers*, 141 F.3d 681, 685 (7th Cir.1998)). Plaintiff need not prove discriminatory intent. *Id*.

Zhan makes no arguments about the Equal Pay Act when responding to the Defendant's motion for summary judgment, except to say that "Plaintiff's prima facie

case on Federal Equal Pay Act has been established" and that "even if Defendant is allowed to argue on this issue, even if Defendant disputes these facts, but [sic] that merely creates a genuine issue of material fact precluding summary judgment." (Dkt. 147 at 10–11). She directs the Court's attention to her own affidavit, (Dkt. 149, Ex. A), in support of the assertion that she has made out a prima facie case. The only potentially relevant allegations in this document are that:

a) "Ripal Mashruwala was promoted in 2015; his salary was raised to the level of Plaintiff's. He was promoted again in 2016 and his salary doubled." (*Id.* at ¶ 17).

b) Mashruwala "has no academic credentials or training certificate in the U.S. or abroad on interface software design and its applications" whereas "Plaintiff has a Master['s] degree in Information Systems Management." *Id.*

c) Robinson was promoted to a position in which he supervised Plaintiff despite not knowing how to generate computer database queries. (Id. at ¶ 18).

Zhan can plausibly claim that higher wages were paid to Mashruwala and Robinson but nothing in the record indicates that they were doing work requiring substantially similar skills, effort, or responsibilities, under similar working conditions. In fact, her own affidavit indicates that they were in supervisory roles rather than database management roles. Plaintiff has therefore failed to make out a prima facie case under the Equal Pay Act. Defendant is entitled to summary judgment on this claim.

### D. First and Fourteenth Amendment Claims

Plaintiff asserts that Defendant violated her First and Fourteenth Amendment rights. (Dkt. 31 at ¶¶ 257–58, Attachment III). She seeks both civil damages and injunctive relief pursuant to § 1983.[14] *Id.* In her response to the Defendant's motion for summary judgment, she says she was "exercising her First Amendment right to reject and report sexual harassment in [the] work environment" and that "whenever a supervisor was involved in sexual harassment, whenever the employer failed to protect female employees from sexual harassment, whenever intentional discrimination is committed, the Fourteenth Amendment [. . .] has been violated." (Dkt. 147 at 7–9). But she does not respond to Defendant's arguments that it is immune from suit in federal courts for claims brought under § 1983.

Defendant argues, correctly, that it is immune from § 1983 suits for civil damages in federal court pursuant to the Eleventh Amendment. *See Rittenhouse v. Bd. of Trustees of S. Illinois Univ.*, 628 F. Supp. 2d 887, 893 (S.D. Ill. 2008) (Board of Trustees of a state university's law school were a state agency for purposes of the Eleventh Amendment, and therefore immune from § 1983 and § 1981 suits for damages); *Kroll v. Bd. of Trustees of Univ. of Illinois*, 934 F.2d 904, 910 (7th Cir. 1991) (Board of Trustees of state university immune from § 1983 suits for damages).

---

[14] The Amended Complaint reads "42 U.S.C. § 1983 *and 42 U.S.C. § 1981 Claims,*" but the allegations themselves only refer to § 1983 not § 1981. In her motion for summary judgment, Zhan denies having made any § 1981 claims, saying that these were "imposed upon" her by the Defendant's counsel. (Dkt. 141, ¶¶ 21–22). Plaintiff makes no mention of any § 1981 claims in her response to the Defendant's motion for summary judgment, so any such claims are dismissed with prejudice.

Defendant's motion for summary judgment is granted with respect to Plaintiff's § 1983 claims.

However, suits against states for prospective injunctive relief are not barred by the Eleventh Amendment. *See Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 73 (1996) (citing *Ex parte Young*, 209 U.S. 123 (1908)); *Edelman v. Jordan*, 415 U.S. 651, 677 (1974). Zhan requests the expungement of her disciplinary record, and an injunction forbidding sexual harassment and retaliation. (Dkt. 31, Attachment III). The Court need not reach the question of whether these remedies fall under the exception carved out by the Supreme Court in *Edelman*, because Zhan's § 1983 claims are defective for another reason.

As the Defendant argues in its reply brief, Zhan is seeking to hold the Board of Directors of the University of Illinois liable for the alleged constitutional torts of its employee, Patrick Robinson. (Dkt. 151 at 11). Section 1983 does not countenance *respondeat superior* liability, and Zhan does not point to any policy or custom, or any act by a sufficiently high-ranking policymaker, that would create direct liability on the part of the Defendant. *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978); *Bohen v. City of E. Chicago, Ind.*, 799 F.2d 1180, 1188 (7th Cir. 1986) ("Under § 1983, actions of a state entity's employees are attributed to the state entity itself if those actions are in furtherance of the entity's 'policy or custom.'"). Defendant's motion for summary judgment on the First And Fourteenth Amendment claims is granted.

## CONCLUSION

For these reasons, Plaintiff Zhan's motion for summary judgment (Dkt. 141) is denied, and Defendant's motion for summary judgment (Dkt. 143) is granted. The Clerk is directed to enter judgment in Defendant's favor and against Plaintiff, and to terminate the case.


E N T E R:

Dated: September 13, 2021

_____
MARY M. ROWLAND
United States District Judge

28